[Crim. No. 1696. First Appellate District, Division One.—October 27, 1933.]

THE PEOPLE, Respondent, v. JOSEPH H. LAFRENZ, Appellant.

William F. Herron and Kenneth B. Dawson for Appellant.

U. S. Webb, Attorney-General, Wm. F. Cleary, Deputy Attorney-General, Matthew Brady, District Attorney, and

Joseph A. Garry, Assistant District Attorney, for Respondent.

KNIGHT, J.—This is an appeal from a judgment of conviction of first degree murder and from an order denying a motion for new trial.

The victim of the murder was Walter J. Mathias, who conducted a small restaurant in the Mission district, near Nineteenth and Folsom Streets in San Francisco. On the morning of August 4, 1930, between the hours of 10 and 11 o'clock, he was found lying on the floor of the kitchen in the rear of his restaurant, unconscious and bleeding from a wound on the head, his skull having been crushed by a heavy blow inflicted with a blunt instrument. Without regaining consciousness he died about 3 o'clock in the afternoon of the same day. The police were unable to find any clue to the perpetrators of the crime until about a year and a half later. At that time, in March, 1932, one Henry Castro, living ·in San Mateo County, was confined in the county jail at Redwood City on a charge of failing to provide for his minor child; and while there he received a letter from his wife, through which the officers learned that Castro knew something about the murder of Mathias. Soon afterwards Castro related his story of the murder to the grand jury of the city and county of San Francisco, and on April 8, 1932, an indictment was returned charging appellant with the commission of the crime. At the time the indictment was found appellant was under sentence to the penitentiary for another crime committed subsequent to the Mathias murder, which, with two prior convictions of felony, was charged also in the indictment. In finding appellant guilty of the Mathias murder the jury fixed the penalty at life imprisonment. He was sentenced accordingly and pursuant to the provisions of section 644 of the Penal Code was adjudged an habitual criminal.

The evidence connecting appellant with the commission of the Mathias murder consisted of the testimony given by Castro, and appellant contended before the trial court that such testimony, if true, established as a matter of law that Castro was an accomplice to the murder and that his testimony connecting appellant with the crime had not been corroborated in the manner required by section 1111 of the

Penal Code. The prosecution contended to the contrary, claiming that Castro was not an accomplice and that consequently corroboration was not essential. The court ruled that the question of Castro's status would be submitted to the jury as a question of fact, and accordingly the respective parties argued that issue before the jury. In furtherance of his contention that Castro was an accomplice, appellant offered instructions to that effect, which the court refused to give, but in lieu thereof gave to the jury certain definitions of an accomplice, together with instructions based on the provisions of said section 1111 of the Penal Code to the effect that a conviction could not be had upon the testimony of an accomplice unless it was corroborated by such other evidence as would tend to connect the defendant with the commission of the offense, and that the corroboration was not sufficient if it merely showed the commission of the offense or the circumstances thereof. In defining an accomplice the court stated in its instructions first that "an accomplice was one who actually participates in the commission of a crime", and later, in conformity with the definition given in said section 1111 of the Penal Code, instructed that an accomplice "is one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given".

As will be observed from the state of the record in which the cause was submitted to the jury, it cannot be determined definitely whether the jury's verdict declaring appellant guilty was founded on the conclusion that, as the prosecution claimed, Castro was not an accomplice and that therefore corroboration was not essential; or on the conclusion that he was an accomplice, as claimed by appellant, but that his testimony was corroborated in the manner required by law. In view of the position taken by the district attorney before the trial court and in his argument to the jury, it may be fairly assumed that the verdict was based on the conclusion first mentioned, that Castro was not an accomplice and that consequently, accepting his testimony as true, it was not necessary that it be corroborated. However, so far as the decision on this appeal is concerned, it is immaterial upon which of said conclusions the verdict was based if, as appellant has contended throughout, the evidence establishes as a matter of law that Castro was an accomplice

and his testimony was not corroborated in the manner required by said code section.

The attorney-general filed no brief in opposition to the appeal, and at the time set for oral argument confessed error, stating that the points urged by appellant as to this branch of the case were unanswerable. Thereupon, at the suggestion of the court, the district attorney's office was invited to present its views in support of the conviction, if it so desired; and in response thereto a brief was filed and oral argument presented, whereby it was sought to show that Castro was not an accomplice. ■ After having given the matter full consideration we are unable to sustain such view, for the reason that according to Castro's own testimony Mathias was killed by appellant while appellant and Castro were attempting to execute the plans of a criminal enterprise theretofore entered into between them to rob Mathias' restaurant; and that being so, under the law Castro was an accomplice to the murder and subject to prosecution therefor. (*People* v. *Boss,* 210 Cal. 245 [290 Pac. 881, 882].) In this regard Castro testified that he met appellant on the morning of the crime at the latter's home on Twenty-first Avenue in San Francisco, after having driven there from his home in San Mateo County in response to a promise previously made by appellant to secure a job for him in San Francisco, and that soon after he reached there appellant induced him to join in the scheme to rob Mathias' restaurant, stating that Mathias kept in his possession some $400; that in pursuance of the plans laid for the robbery they drove out to the restaurant in appellant's machine, appellant at the time being armed with a revolver; that finding Mathias alone appellant entered the restaurant and inveigled Mathias into the kitchen in the rear, under the pretext of selling him some liquor; that while this was going on he, Castro, entered the front of the restaurant, robbed the cash register, obtaining therefrom only $1.50, returned to the parked automobile in front, and that appellant soon followed and they drove away. He further stated that soon after leaving the scene of the crime appellant told him that the plans did not turn out as he expected, that Mathias started to make trouble and that he had "to hit him over the head". Continuing, Castro testified that he was not aware of the serious injuries inflicted

on Mathias until that night when he read the newspaper, and that the next morning, through the press also, he learned that Mathias died from the effects of the blow on the head. As pointed out by the district attorney, Castro also testified that at no time did he contemplate that acts of violence would be resorted to in carrying out the plans for the robbery. Under the law, however, neither such fact, nor the fact that he did not actually participate in the acts of violence and that the same were committed out of his immediate presence, exculpated him from criminal responsibility for the murder which he asserts grew out of the criminal enterprise into which he voluntarily entered. As said in *People* v. *Boss, supra:* "The law is . . . well settled that where two or more persons enter into a conspiracy to commit a robbery or burglary and one of the conspirators commits a murder in the perpetration of the crime all of said conspirators are equally guilty with said co-conspirator of murder of the first degree, and it is no defense that those who did not actually participate in the killing did not intend that life should be taken in the perpetration of the robbery, or had forbidden their associate to kill, or regretted that it had been done. (*People* v. *Lawrence,* 143 Cal. 148 [76 Pac. 893, 68 L. R. A. 193].) In *People* v. *Perry,* 195 Cal. 623, 638 [234 Pac. 890, 896], the same doctrine is stated as follows: "If a homicide is committed by one of the confederates while engaged in an attempt to perpetrate the crime of robbery in furtherance of a common purpose, the person or persons so engaged, but who did not actually do the killing, are as accountable to the law as though their own hands had intentionally fired the fatal shot or given the fatal blow, and such killing is murder of the first degree. The jury has no option but to return a verdict of murder of the first degree whether the killing was intentionally or accidentally done . . . (citing a number of earlier cases)." And in a later case, *People* v. *Smith,* 215 Cal. 749 [12 Pac. (2d) 945], the court said that the authorities adhering to such doctrine were so well known that it would seem to be an unnecessary, irksome task to again cite them.

Before the conviction can be sustained, therefore, it must appear that Castro's testimony was corroborated by other evidence tending to connect appellant with the com-

mission of the crime; and after examining the record we are of the opinion that, as appellant contends and as the attorney-general concedes, it fails to disclose any such independent evidence. It is true, as the district attorney points out, independent evidence was introduced in corroboration of Castro's statement that he was at or near appellant's home early on the morning of the day of the crime, it being shown in this regard that his automobile worked free from the place where he had parked it near appellant's home, and ran down the hill into the side of a building; but appellant's home was more than five miles distant from the scene of the crime and there is no independent evidence whatever to show that at any time that morning Castro saw appellant or was in his company. Nor is there any corroboration of Castro's testimony that on the way back from the robbery he and appellant met appellant's brother, Charles, on the street. · In this respect Castro was unable to state even remotely where they met, and appellant's brother, who was called as a witness on behalf of the prosecution, testified that such was not the fact, and his testimony on this point was supported by that of his mother. With reference thereto he stated that he met Castro about noon the day of the murder at his, Lafrenz', mother's home on Granada Avenue in the Ingleside district, which was also more than five miles distant from the scene of the crime; that appellant was there at the time, and he had been there continuously since 8 o'clock that morning, and that Castro arrived alone and without his automobile. He further testified that Castro remained there until approximately 3 o'clock in the afternoon, at which time he left with appellant, intending to drive to appellant's house for the purpose of removing Castro's machine from the side of the building into which it had plunged. Appellant did not testify as a witness at any stage of the case, nor was any evidence introduced of his having made any extrajudicial statements or declarations, his main defense being an alibi, which, as indicated, he sought to establish by the testimony of his relatives. The district attorney also points out that the autopsy surgeon testified that the injury to Mathias' head was inflicted by some kind of a blunt instrument, which he stated might have been the butt of a revolver, and in this connection independent evidence was introduced to show that in August,

1931, which was more than a year after the murder was committed, appellant had in his possession a revolver which Castro identified at the trial as the one he claims appellant was carrying at the time they set out to rob the restaurant. But there is no corroboration whatever of Castro's testimony that appellant carried a revolver on the day of the crime; nor are there any circumstances from which it may be inferred that, if the fatal blow was inflicted with a revolver, the weapon found in appellant's possession more than a year thereafter was the one used for such purpose.

For the reasons stated it is our opinion that the evidence cited by the district attorney fails to meet the legal requirements of said section 1111 of the Penal Code. In construing said section the decisions hold, it is true, that corroborative evidence of an accomplice is legally sufficient even though it be slight and when standing alone entitled to but little weight; furthermore, that it need not be corroborative of the precise facts related by the accomplice (*People* v. *Negra,* 208 Cal. 64 [280 Pac. 354]); but in this connection it is also held that such independent evidence must do more than cast a mere suspicion on the accused. (*People* v. *Kempley,* 205 Cal. 441 [271 Pac. 478]; *People* v. *Robbins,* 171 Cal. 446 [154 Pac. 317]; *People* v. *Davis,* 210 Cal. 540 [293 Pac. 32]; *People* v. *Janssen,* 74 Cal. App. 402 [240 Pac. 799].)

The judgment and order are reversed.

Tyler, P. J., and Cashin, J., concurred.