[Crim. No. 2711. First Dist., Div. Two. Apr. 24, 1951.]

THE PEOPLE, Respondent, v. WILLIAM McNAMARA, Appellant.

William Klein for Appellant.

Edmund G. Brown, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

NOURSE, P. J.—Found guilty, by a jury, of conspiracy to commit forgery, defendant William McNamara appeals from the judgment rendered accordingly and from the orders denying his motions for a new trial and in arrest of judgment. Although the latter order is reviewable on the appeal from the judgment the order itself is not appealable and the purported appeal from said order must be dismissed. (*People* v. *Williams,* 184 Cal. 590 [194 P. 1019].)

William McNamara together with Henry Rekula and Eileen Rekula, his wife, were charged by one indictment with two

counts of forging and passing with knowledge of falsity a check with intent to defraud (Pen. Code, § 470) and with one count of conspiracy to commit forgery (Pen. Code, § 182.) In each of the first two counts one check which is alleged to have been forged and passed is fully set out. The check set out in the first count was purportedly drawn by Moore Machinery Company, the one in the second count by Charles E. Hires Company. The conspiracy count alleges two overt acts, the first being that Henry Rekula on or about February 24, 1950, entered the premises of "Benatars" at Fourth and Market Street, San Francisco, at which time and place the evidence showed he passed the above Moore Machinery Company check and the second that Eileen Rekula, on or about March 31, 1950, entered the premises of H. Liebes and Company, Grant Avenue and Geary Street, San Francisco, when and where, according to the evidence, she passed the above Charles E. Hires Company check. Appellant pleaded not guilty. The Rekulas turned state's evidence and testified for the People. The jury found appellant not guilty on the first two counts and guilty on the last count. On appeal he contends that in view of the evidence said verdicts are inconsistent and that the not guilty verdict as to the specific acts of forgery necessarily implied acquittal on the conspiracy count and further that the evidence was insufficient to support the verdict of guilty because the testimony of the Rekulas, who were accomplices, was not corroborated as required by section 1111, Penal Code.

It is undisputed and proved by evidence independent of that of the Rekulas that the two checks set out in the indictment were forged and passed. The numbered blank form used for the false Moore Machinery Company check (which check was introduced in evidence as People's Exhibit 2) was taken in a burglary of said company in the year 1949; in filling out the check a check protector was used differing from the one in use with said company; no person of the name of the purported signer for the company or of the purported payee had any connection with said company; the check was cashed at Benatars drugstore in San Francisco. Its manager identified Henry Rekula as the person who passed it. The numbered blank form of a payroll check used for the false Charles E. Hires Company check (this check was in evidence as People's Exhibit 3) was taken in a burglary of said company on March 19, 1950; a check protector was used in the forgery, whereas said company did not use such

protection; no person of the name of the purported drawer was authorized to sign for the company and no person of the name of the purported payee was on its payroll. The check was cashed at H. Liebes Company in San Francisco.

With respect to the relation of appellant to the alleged crimes the evidence was in short as follows: Henry Rekula testified that having heard of defendant McNamara he went to look for him and found him in his car on 22d and Mission in San Francisco. As to the date of this first meeting Rekula's testimony was first vague and conflicting, varying from the beginning of March to the end of January, 1950, but finally it was fixed on Saturday, February 18, 1950. At that meeting McNamara asked Rekula if he wanted to pass some checks. They agreed that if Rekula would pass checks each would get half of the proceeds. In the car McNamara gave him some Moore Machinery Company checks including the check in evidence as People's Exhibit 2. McNamara took him down to a place on Market near Second to get an identification card in the name of William H. Chase, the purported payee of said check. (After investigation it was stipulated at the trial that the date on which said identification card was made at said place was February 18, 1950.) From there they went to San Jose where Rekula cashed four checks at different places while McNamara remained in the car. Rekula got $200 from those checks of which he gave $100 to McNamara. Some days later he cashed the check People's Exhibit 2 at Benatars store. Two more Moore Machinery Company checks he cashed at other places in San Francisco. When he got the check Exhibit 2 it was complete except for the signature of William H. Chase on the back which he signed at Benatars. Some two or three weeks later McNamara picked him up in a car and gave him seven Golden Gate Terminal checks. Two or three days later he met McNamara's brother and gave him $100 for appellant. Thereafter appellant phoned Rekula at home and asked if he wanted more checks. Rekula told him he wanted to see him first. McNamara said he would bring them up. McNamara then brought the Hires Root Beer checks up to Rekula's home. One of them was People's Exhibit 3. First he gave him three or four of these checks. The proceeds of these would go to McNamara and then he would bring the rest of them. Rekula gave him the money for the first three checks and ultimately got 10 to 15 of such checks, all of which he and his wife cashed. Later McNamara phoned again and brought Clement Sports Center checks to

Rekula's apartment. That was in the last part of April, 1950. He did not cash any of those. On May 3, 1950, he was arrested. Later in the trial Rekula declared that he made a mistake when he testified that the check People's Exhibit 2 was one of the Moore Machinery Company checks appellant gave him. "He got it off another guy." He met that other person, for whom he cashed more checks, after he cashed checks for McNamara. Otherwise he confirmed his former testimony.

Eileen Rekula testified she saw McNamara first when he brought some checks to their home. She thought they were Charles E. Hires checks. It was in the end of February, 1950. She endorsed the signature on the back of the check People's Exhibit 3 and passed it. She passed one at Liebes. She passed Charles E. Hires checks, Golden Gate Terminal checks and some Clement Sports Center checks, but no Moore Machinery Company checks. The Golden Gate Terminal checks she passed were received from McNamara. She was arrested when cashing a Clement Sports Center check. McNamara came to their house a second time about three weeks or a little more after the first occasion. He then brought the Clement Sports Center checks. She did not know that her husband got checks from anybody except Bill McNamara. She had an identification card for each name in which checks were made out. Defendant did not go with her when she had them made out but she told him that she was going to do it.

Alfred Torre, a police inspector, testified that he arrested McNamara on May 6, 1950. For three weeks preceding the arrest he had had McNamara from time to time under surveillance. On the day of the arrest he saw McNamara, whose car was parked in the wrong direction, drive away from the curb across the opposing traffic. He followed him and brought him to the curb. McNamara was driving and his wife was sitting in the front seat. After the car was brought to the curb the witness heard McNamara say "frameup." Witness and the officers with him then searched the car. When he was opening the glove compartment he saw a check protector with a cover on it on the floor of the car, directly under the front passenger seat at the place where the feet of the passenger would be. At most a slight portion of it was under the seat. There was not sufficient room for the check protector to fit under the bottom of the seat. He questioned McNamara who denied that he knew anything about it. Mrs. McNamara stated that she saw the check protector in

the car when she got into the car. On a question how the check protector got into the car McNamara gave no reply. Witness then placed McNamara under arrest without further questioning.

Francis X. LaTulipe, Director of the Bureau of Identification, Photograph Bureau and the Technical Laboratory of the San Francisco Police Department, examined printing made by a check protector on the checks People's Exhibits 2 and 3 in conjunction with the check protector found in McNamara's car, received in evidence as People's Exhibit 7. He made several exemplars with that check protector and made photographic enlargements both of these exemplars and of the printing on the checks. He found five characteristic similarities between them (for instance each time the first star of the four stars which appear at the left hand side of the amount of the check was faint, both in the check in evidence and in the exemplars) and concluded that it was quite possible that these checks could have been made on that machine.

Defendant McNamara as a witness in his own behalf denied all testimony of the Rekulas with respect to his connection with the checks. He testified that he met Rekula only after he had been released from a hospital where he had been from February 23 to March 3, 1950. He had visited the Rekula home only once to give an invitation for his wedding. When three weeks before his arrest his house had been searched he had voluntarily visited the police department and had given specimens of his handwriting, writing down what he was asked to write. On the day of the arrest a certain Paul Robbins had borrowed his car for the day and had returned it by parking it around the corner. When later he, McNamara, and his wife went into the car he had not seen the check protector. He got in at the driver's side, his wife at the other side. He only saw the check protector when Inspector Torre pulled it from where his wife had been sitting. It was right under where his wife's legs had been, right up against the seat. His wife hadn't said anything about it when she got into the car. He told the inspector that he did not know where it came from; that it was the first time he saw it. He did not say anything about Robbins then. None of the signatures on the checks had been in his handwriting; he had not given checks to others for signature. He had been previously convicted of a felony (two charges of robbery).

Daniel Edward McNamara, brother of defendant, denied having received $100 from Rekula for his brother.

Dolores McNamara, wife of appellant, testified that she noticed the check protector when she entered the car. It was not in plain view, but pushed back. She was wearing slacks. She did not mention the machine to her husband. She did not know what it was. She told the inspector she saw something on the floor and figured it was a piece of something her husband was working on. He often had radio equipment in the car. She had her feet right on top of it. The car of appellant, especially the inside, was viewed by the jury.

On the basis of the above evidence appellant offers in the first place an argument to the following effect. As the two overt acts alleged related solely to the checks People's Exhibits 2 and 3 appellant could only be found guilty of a conspiracy embracing the forging or passing of one or both of these checks. If he was a participant in such a conspiracy (in view of the evidence, probably by providing them for the persons who actually passed them) he would be necessarily guilty as a principal with respect to the actual passing charged in the first two counts of the indictment (Pen. Code, § 31.) The verdict of not guilty on these counts absolved the defendant of all such forms of participation in the forging and passing as would make him a principal and therefore likewise acquitted him of the conspiracy. This reasoning may well be correct insofar as it is argued that the verdict of not guilty on the first two counts and of guilty on the conspiracy count are logically inconsistent in view of the evidence and the provision of section 31, Penal Code. However it does not result, as contended by appellant, that the conviction on the conspiracy count is void.

In *People* v. *Amick,* 20 Cal.2d 247, 251-52 [125 P.2d 25], the Supreme Court quotes with approval the following from *People* v. *Ranney,* 123 Cal.App. 403 [11 P.2d 405]: " 'The disposition of one count had no bearing upon the verdict with respect to other counts, regardless of what the evidence may have been. Each count must stand upon its own merit. The amendment to section 954 of the Penal Code conclusively settles this controversy adversely to the contention of the appellant. That section provides for the charging of "two or more different offenses of the same class of crimes or offenses, under separate counts." That section, as amended in 1927, then provides that, "A verdict of acquittal of one or more counts shall not be deemed or held to be an acquittal of any other count." This language clearly means that each count in an indictment or information, which charges a separate

and distinct offense must stand upon its own merit, and that a verdict of either conviction or acquittal upon one such charge has no effect or bearing upon other separate counts which are contained therein. . . . There are no authorities to the contrary in other jurisdictions where a statute exists similar to the California law above quoted.' '' See, also, *People* v. *Guerrero,* 22 Cal.2d 183, 190 [137 P.2d 21] ; *People* v. *Codina,* 30 Cal.2d 356, 360-361 [181 P.2d 881] ; *People* v. *Hartshorn,* 59 Cal.App.2d 285, 287 [138 P.2d 782] ; *People* v. *Wallace,* 78 Cal.App.2d 726, 742-43 [178 P.2d 771].

Actually there is no indication that the jury by its not guilty verdicts with respect to the forgery counts intended to decide that there was not sufficient proof of defendant's being concerned in these forgeries in any manner which would make him a principal under section 31, Penal Code. No instruction as to aiding, abetting, advising or encouraging was given. Forgery was defined in the instructions in accordance with section 470, Penal Code, only. This may well have led the jury to the incorrect belief that defendant could be found guilty on the forgery counts only if it was proved that he had physically forged or passed the alleged checks and that otherwise he would be found guilty on the conspiracy count only.

Appellant relies mainly on *Oliver* v. *Superior Court,* 92 Cal.App. 94 [267 P. 764]. In that case it was held that where defendant was found not guilty of any of the specific crimes alleged in the first 33 counts of the indictment and the 34th, the conspiracy count, alleged as the only overt acts the specific crimes alleged in the other 33 counts, described as such, there was a special adjudication that none of the overt acts alleged had been proved and without any overt act there could be no criminal conspiracy. To the same effect is *In re Johnston,* 3 Cal.2d 32 [43 P.2d 541]. The distinction with respect to our case is obvious. In this case the overt acts alleged are not the specific crimes alleged to have been committed by the defendant and of which he was found not guilty but certain acts of the other conspirators in the execution of said specific crimes. The fact that appellant was found not guilty of these specific crimes does not negative in any way the alleged and undoubtedly proved overt acts, to wit, that his alleged coconspirators went into certain shops for the purpose of passing the false checks. All attempts made in behalf of the convicted defendant to extend the decisions in the Oliver and Johnston cases to other situations of alleged

inconsistency between verdicts have failed. See, for instance, *People* v. *Guerrero, supra,* 22 Cal.2d 183; *People* v. *Dukes,* 2 Cal.App.2d 698, 700 [38 P.2d 805]; *People* v. *Gilbert,* 26 Cal.App.2d 1, 22-23 [78 P.2d 770]; *People* v. *Yant,* 26 Cal. App.2d 725, 731 [80 P.2d 506]. We agree that there should not be any extension which would conflict with the principle of section 954, Penal Code.

 Appellant's reference to double jeopardy and to *People* v. *Greer,* 30 Cal.2d 589 [184 P.2d 512], is not in point, where here there was only one indictment, one trial, simultaneous verdicts and where the crime of conspiracy and the specific crimes forming the object of the conspiracy are not necessarily included offenses but distinct offenses of both of which the guilty party may be legally convicted. (*People* v. *Talbot,* 220 Cal. 3, 21 [28 P.2d 1057]; *People* v. *Clensey,* 97 Cal.App. 71, 73 [274 P. 1018]; *People* v. *Martin,* 114 Cal.App. 392, 396 [300 P. 130].)

With respect to the contended lack of corroboration of the evidence given by the Rekulas it is conceded that they were accomplices and trial was had on that basis, the jury expressly having been instructed to that effect. Therefore under section 1111 of the Penal Code corroboration of their testimony was required "by such other evidence as shall tend to connect the defendant with the commission of the offense." It is generally held that the corroborating evidence must tend to do so without the aid of the testimony of the accomplice, notwithstanding the fact that an express clause to that effect has been eliminated from section 1111 in the year 1911. (*People* v. *Robbins,* 171 Cal. 466, 473 [154 P. 317]; *People* v. *Rankin,* 10 Cal.2d 198, 201 [74 P.2d 71].) The weight of such corroborative evidence is a question for the jury to determine. (*People* v. *Trujillo,* 32 Cal.2d 105, 112 [194 P.2d 681]; *People* v. *Griffin,* 98 Cal.App.2d 1, 28 [219 P.2d 519].)

 "Therefore, unless the appellate court can say that the corroborating evidence is either incompetent or is, as a matter of law, of such a character that it could not tend to connect defendant with the commission of the offense and could not reasonably support an inference of such connection, the finding of the jury on that issue should not be disturbed." (*People* v. *Collier,* 111 Cal.App. 215, 229-30 [295 P. 898]; see, also, *People* v. *Shurtleff,* 113 Cal.App. 739, 743 [299 P. 92]; *People* v. *Menne,* 4 Cal.App.2d 91, 102 [41 P.2d 383].)

 In this case the corroborating evidence is the independent evidence as to the passing of the false checks People's

Exhibits 2 and 3 by the Rekulas; appellant's testimony that he knew the Rekulas; the stated testimony of police inspector Alfred Torre, appellant himself, and appellant's wife with respect to the facts that when appellant was arrested on May 6, 1950, there was in the front part of his car under the feet of Mrs. McNamara the check protector, People's Exhibit 7, and that appellant denied that he knew anything about that check protector or that he had even seen it before; the testimony of Francis X. LaTulipe with respect to the similarities found between the exemplars made with said check protector and the forged checks People's Exhibits 2 and 3, and the view of appellant's car by the jury for the purpose of determining in how far the check protector could have been invisible to appellant at the place where it was found in his car. As the jury after full instruction on the requirement of corroboration and all rules pertaining to it found appellant guilty said verdict implies that, after having viewed the car the jury disbelieved appellant's testimony that he did not know of the presence of the check protector, that it considered said check protector as the probable instrument with which the forgeries to which the conspiracy related were executed and that his possession of said instrument considering his denial of all knowledge of it, tended sufficiently to connect him with the commission of the crime. We cannot say as a matter of law that such findings and inferences cannot reasonably be made. ■ "It is well established that possession of stolen property may be sufficient corroboration to warrant a conviction upon the testimony of an accomplice." (*People* v. *Rice,* 29 Cal.App.2d 614, 620 [85 P.2d 215]) at least when no explanation of the possession is given sufficient to raise a reasonable doubt (*People* v. *Miller,* 54 Cal.App.2d 384, 386 [128 P.2d 785]). The same rule must apply to possession of the probable instrument of a crime.

Appellant argues that the unlawful combination, the gist of the conspiracy count, is not established by anything but the testimony of the two alleged accomplices and that the corroborating evidence requires the testimony of the accomplices to give it direction to the conspiracy. Moreover the evidence as to the check protector on which it was "quite possible that the checks could have been made" could at most be a suspicious circumstance, and evidence which does not do more than cast a suspicion on the accused is insufficient corroboration.

The corroborating evidence need not establish the actual commission of the offense, the corpus delicti. (*People* v. *Mazzola,* 99 Cal.App. 682, 685 [279 P. 211]; *People* v. *Yeager,* 194 Cal. 452, 473 [229 P. 40].) In the latter case it is further said: "The corroborative evidence must tend in some slight degree, at least, to implicate the defendant. While it need not be strong, more is required by way of corroboration than mere suspicion. It is sufficient if the corroborating evidence tends to connect the defendant with the commission of the offense, though if it stood alone it would be entitled to little weight. It is not necessary to corroborate the accomplice by direct evidence. If the connection of the accused with the alleged crime may be inferred from the corroborating evidence in the case it is sufficient." The law as stated is generally accepted. As we held before, the jury could reasonably find that the possession of the check protector and the circumstances relating thereto linked appellant sufficiently to the forgeries; the actual agreement, combination, may then be proved by the testimony of the accomplices. The link with the specific forgeries connected appellant inferentially with the conspiracy also. It cannot be said that because of the use of the words "quite possible" by the witness LaTulipe, the corroborating evidence could as a matter of law have no more convincing force than a suspicion. The weight of the five points of similarity testified to by said witness in connection with the further circumstances was a matter of fact for the jury, not to be disturbed by us.

*People* v. *Lafrenz,* 134 Cal.App. 687 [26 P.2d 317], on which appellant mainly relies in this connection is not in point. In that case all corroborating evidence relied on in this case, to wit, the proof of specific crimes committed by defendant's alleged coconspirators and defendant's link to those specific crimes was totally absent.

The attempt of Henry Rekula to retract his former testimony that the check People's Exhibit 2 was one of the Moore Machinery Company checks which appellant gave him at their first meeting and the testimony of Eileen Rekula which placed the date on which appellant brought Charles E. Hires Company checks earlier than the burglary at that company and earlier than the time testified to by her husband only caused conflicts in the evidence to be solved by the jury. Even if the jury had accepted the retraction of Henry Rekula and on that ground eliminated his entrance of the premises of Benatars as a overt act of the conspiracy in which appellant

took part, the conspiracy conviction could stand. "No more than proof of a single alleged overt act by one of the conspirators is necessary to support the verdict." (*People* v. *Garrison*, 80 Cal.App.2d 458, 563 [181 P.2d 738].)

On the above grounds there was no error in denying appellant's motions for a new trial and in arrest of judgment.

The purported appeal from the order denying the motion in arrest of judgment is dismissed. The judgment and the order denying the motion for a new trial are affirmed.

Goodell, J., and Dooling, J., concurred.

A petition for a rehearing was denied May 9, 1951, and appellant's petition for a hearing by the Supreme Court was denied May 24, 1951.