[Crim. No. 2825. First Dist., Div. One. Jan. 29, 1953.]

THE PEOPLE, Respondent, v. FRED SHAW, Appellant.

Nathan C. Coghlan for Appellant.

Edmund G. Brown, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—Appellant Fred Shaw and others, including Robert Williams, John Cartwright, and Robert Andrews, were indicted upon two counts: (I) violation of sections 484 and 487 of the Penal Code, grand theft, committed about March 20, 1951, by willfully, unlawfully and feloniously taking $6,000, the property of Sam E. Frudakis; (II) violation of section 182 of the Penal Code, committed about March 20, 1951, by willfully, unlawfully and feloniously conspiring to commit grand theft, and in pursuance of the object of the conspiracy they committed these overt acts, (1) Williams carried on a conversation with Frudakis, (2) Shaw met with Frudakis in a restaurant, (3) Andrews received $6,000 from Frudakis, and (4) Cartwright met with Shaw and Frudakis.

Shaw was convicted on both counts. He has appealed from the judgment and from an order denying his motion for a new trial. Williams pleaded guilty to grand theft. Cartwright did not appear at the trial, and was neither considered nor convicted. Andrews, acquitted of grand theft but convicted of conspiracy, appealed and then dismissed his appeal.

Shaw does not question the sufficiency of the evidence to support the verdict against him. In support of his appeal, Shaw claims: the acquittal of Andrews on Count I voided Andrews' conviction on Count II and Shaw's conviction on both counts; and that erroneous instructions were given on alibi, impeachment, and false confessions.

(1) *Concerning the assertedly inconsistent verdicts and their effect,* Shaw reasons that Andrews' acquittal of grand theft negatives Overt Act No. 3; that Overt Acts 1 and 2 were insufficient to support a conspiracy charge (apparently

there was no evidence of Overt Act 4) ; hence, there remained no adequate basis in law for Andrews' conspiracy verdict.[1] Shaw then argues that the acquittal of Andrews on Count I and the nullification of his conviction on Count II render Shaw's conviction on each count a nullity.

The argument is unsound. It seems to rest upon two assumptions, neither of them correct: (1) that the offenses of grand theft and conspiracy to commit grand theft are essentially the same, not separate and distinct, and (2) that the conviction or acquittal of Andrews and of Shaw upon each count, respectively, rested upon identical evidence.

That the two types of offense are separate and distinct is too well established to require extended discussion. An essential element of Count II was the criminal conspiracy, which was not included in Count I, the grand theft charge. That characterizes them as separate and distinct offenses. (*People* v. *Talbot*, 220 Cal. 3, 21 [28 P.2d 1057] ; *People* v. *Klinkenberg*, 90 Cal.App.2d 608, 635-636 [204 P.2d 47, 613].)

Shaw and Andrews were not connected with either offense by identical evidence. The parts which they played in the drama of persuading Frudakis to part with his money were separate and distinct.[2] Defendant Williams knew Frudakis, having become acquainted with him when patronizing the tavern of which Frudakis was a part owner. Williams told Frudakis that he knew a man who had $15,000 worth of whiskey he would sell for $9,000 and introduced Shaw as one who knew the man who had the whiskey for sale. The next day Frudakis met with Shaw for the purpose of meeting the man who had the whiskey for sale. The meeting was delayed from time to time. During much of this period, Shaw and Frudakis were in a restaurant. Andrews met them there. Andrews and Shaw engaged in a conversation during which Andrews stated that he had some "white stuff" that he would sell for $15,000. Shaw got $6,500 from a bank and induced Frudakis to get the money for the whiskey. Frudakis could only get $6,000. Meanwhile, Shaw represented that he had contacted a man who wanted to buy the "stuff" at a price

[1]How the asserted nullity of Andrews' conviction can be invoked by Shaw, appellant does not make clear. (See *People* v. *Powell*, 99 Cal.App. 2d 178, 183 [221 P.2d 117].)

[2]In furnishing the summary which follows, to indicate the different parts which the defendants respectively played, we do not mean to convey the impression that the evidence was without conflict, for there were conflicts. We mean, simply, that there was substantial evidence to support the facts narrated in this summary.

that would leave Shaw a large profit. But Shaw needed $9,000, in addition to his $6,500, to buy it from Andrews. Shaw asked Frudakis to lend him the money. When Frudakis was reluctant to get "mixed up" in the deal, Shaw told him that it was his, Shaw's, business and that Frudakis was not mixed up in it. When the time came for the delivery of the "stuff" to Shaw, Shaw delivered his money to Andrews and asked Frudakis to give Andrews the $6,000. Shaw assured Frudakis he would get his money back in a few hours and be able to buy the whiskey and make a large profit thereon. Frudakis handed the money to Shaw, who handed it to Andrews. Andrews gave Shaw a package containing some white powder in a cellophane bag that had Chinese or Japanese lettering on it. Later, Shaw and Frudakis went to deliver the package to the person who, supposedly, was buying it from Shaw. When they arrived at the appointed place, they were met with the cry "Vice squad" and two men appeared on the scene. One of these men told Frudakis that he knew who Frudakis was. Frudakis and Shaw left the scene in haste, but Frudakis returned to give himself up to the "police," and upon his return saw the men leaving in a blue Buick sedan which resembled Shaw's car.

The different and much more extensive part which Shaw played, than did Andrews, demonstrates the very considerable difference in the evidence tending to connect them, respectively, with the crime. ■ "When there is the slightest difference in the evidence as between two persons jointly tried the trier of facts may jointly weigh the evidence and make allowance for such difference, and when that is done and one is acquitted and the other convicted, the fact that the evidence involves the acquitted person to some extent will not require the exoneration of the other. [Citations.]" (*People* v. *Edwards,* 81 Cal.App.2d 655, 661 [185 P.2d 74] ; a petition for a hearing by the Supreme Court was denied. See, also, *People* v. *Powell, supra,* 99 Cal.App.2d 178, 182-183; *People* v. *Stembridge,* 99 Cal.App.2d 15, 24-25 [221 P.2d 212] ; *People* v. *Taylor,* 88 Cal.App.2d 983, 987-988 [199 P.2d 751] ; in each of which a petition for a hearing by the Supreme Court was denied.)

Shaw's claim that Andrews' acquittal of grand theft left no basis for Andrews' conspiracy conviction is based upon a theory that such acquittal amounted to a finding that Overt Act 3 (that Andrews received $6,000 from Frudakis in pursuance of the object of the conspiracy) was not com-

mitted, and that Overt Acts 1 and 2, although proven, were insufficient to establish a conspiracy. We need not decide whether the acquittal negatived the commission of the Overt Act 3. Overt Acts 1 and 2 were amply proven. It is sufficient if the jury found that at least one of the conspirators committed at least one of the overt acts alleged. (*People* v. *Shurtleff*, 113 Cal.App. 739, 741-742 [299 P. 92].) Shaw's contention that Overt Acts 1 and 2 were not sufficient to establish the commission of a conspiracy is in effect a claim that neither constitutes an "act . . . done within this state to effect the object" of the conspiracy, within the meaning of those words as used in section 184 of the Penal Code. The point is not well taken. The indictment, after appropriately and sufficiently alleging the formation of the conspiracy by agreement among the defendants, alleged as Overt Act 1 "That thereafter, at and in the City and County of San Francisco, State of California, and in pursuance of the object of said conspiracy, the said GEORGE WILLIAMS did carry on a conversation in the City and County of San Francisco with SAM E. FRUDAKIS," and as Overt Act 2 "That thereafter, at and in the said City and County of San Francisco, State of California, and in pursuance of the object of said conspiracy, the said FRED SHAW did meet with SAM E. FRUDAKIS in a restaurant." Williams' conversation with Frudakis, as we have already noted, was an act quite definitely committed "to effect the object" of the conspiracy, for it was in that conversation that Williams made the original contact with Frudakis and aroused the latter's interest by telling him of an opportunity to make a large profit by purchasing a supply of whiskey at a greatly reduced price. Similarly, Shaw's meeting with Frudakis in a restaurant was the commission of an act done "to effect the object" of the conspiracy. During that meeting Shaw devoted his attention to further stimulating and arousing Frudakis' interest to the point of parting with his money. As said in *People* v. *Ragone*, 84 Cal.App.2d 476, at 480 [191 P.2d 126]: ". . . it is not essential that any of the acts relied upon in support of a charge of conspiracy be an act amounting to a criminal attempt or one unlawful in itself. An act, which may be otherwise lawful, completes the crime of conspiracy when it is done for the purpose of effecting the object of the unlawful agreement (*People* v. *Beck*, 60 Cal. App. 417 [213 P. 61]; *People* v. *Rodriguez*, 61 Cal.App. 69 [214 P. 452]; *People* v. *George*, 74 Cal.App. 440 [241 P.

97])." Numerous illustrations of various acts done in furtherance of a conspiracy and found sufficiently alleged and proven as "overt acts" are furnished in *People* v. *Beck,* 60 Cal.App. 417, at 422 and 423 [213 P. 61]. "It is undoubtedly the law that in alleging an overt act in conspiracy cases it is sufficient to charge that the act relied upon was performed in furtherance or in pursuance of the conspiracy (*People* v. *George,* 74 Cal.App. 440 [241 P. 97]; 12 C.J. 624)." (*People* v. *Stevens,* 78 Cal.App. 395, 399 [248 P. 696].)

Accordingly, there is no logic in the argument that the acquittal of Andrews on the grand theft charge nullified his conviction on the conspiracy charge and that such acquittal and nullification in effect nullified Shaw's conviction on each charge. This case is not at all like *Oliver* v. *Superior Court,* 92 Cal.App. 94 [267 P. 764], or *In re Johnston,* 3 Cal. 2d 32 [43 P.2d 541], in each of which the only overt acts alleged in the conspiracy charge were the substantive crimes charged in other counts. Acquittal on each of those other counts naturally operated as a finding that none of the overt acts was committed. Our case is, instead, quite like *People* v. *McNamara,* 103 Cal.App.2d 729, 737-738 [230 P.2d 411], *People* v. *Gilbert,* 26 Cal.App.2d 1, 22-23 [78 P.2d 770], and *People* v. *Yant,* 26 Cal.App.2d 725, 731-732 [80 P.2d 506], in each of which there was proof of one or more overt acts alleged in the conspiracy count, which acts, as in our case, were separate and distinct from the specific crime or crimes charged in other counts of which a defendant was found not guilty.

We conclude that there is nothing in this case to prevent these provisions of section 954 of the Penal Code from applying: "An indictment . . . may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class . . . under separate counts. . . . The prosecution is not required to elect between the different offenses or counts . . ., but the defendant may be convicted of any number of the offenses charged . . . *A verdict of acquittal of one or more counts shall not be deemed or held to be an acquittal of any other count.*" (Emphasis added.) That these words mean what they say has been too thoroughly and repeatedly expounded to require repetition. (See *People* v. *Stangler,* 18 Cal. 2d 688, 695-696 [117 P.2d 321]; *People* v. *Amick,* 20 Cal.2d 247, 250-254 [125 P.2d 25]; *People* v. *Codina,* 30 Cal. 2d 356, 360-361 [181 P.2d 881]; *People* v. *Nye,* 38 Cal.2d 34,

39 [237 P.2d 1]; *People* v. *Ranney,* 123 Cal.App. 403, 406-407 [11 P.2d 405]; *People* v. *Horowitz,* 131 Cal.App.Supp. 791, 793-794 [19 P.2d 874]; *People* v. *McNamara,* 103 Cal. App.2d 729, 736-737 [230 P.2d 411]; *People* v. *Coakley,* 108 Cal.App.2d 223, 229 [238 P.2d 633].)

(2) *Shaw claims error in the refusal of his requested instruction on alibi and the giving of another instead.* Each instruction mentioned the fact that the defendants had introduced evidence to the effect that they were not present at the time and place of the commission of the alleged offense. The rejected instruction then concluded: "You are to understand that it is not the duty of the defendants to prove, under such a defense, that they were not present at such time and place, but it is the duty of the prosecution to prove beyond any reasonable doubt that they were so present, and if any evidence offered by the defense leaves in your minds any reasonable doubt as to their whereabouts on the occasion in question, it is your duty to find both of them not guilty."

In lieu thereof the court instructed: "If after a consideration of all the evidence you have a reasonable doubt whether or not the defendants were present at the time the crime was committed, they are entitled to an acquittal."

Shaw claims the court's instruction could have misled the jury into believing that the defendants had the burden of proving their asserted alibi beyond a reasonable doubt.

The point is not well taken. The instruction given is not susceptible of such an interpretation. It simply told the jury that if their consideration of all the evidence left them with a reasonable doubt as to defendants' presence, they must acquit. That was an accurate and clearly understandable statement of the applicable provision of law. (*People* v. *Mc-Coy,* 25 Cal. 2d 177, 184 [153 P.2d 315]; *People* v. *Lewis,* 81 Cal.App.2d 119 [183 P.2d 271]; *People* v. *Spillard,* 15 Cal. App.2d 649 [59 P.2d 887].)

(3) *Did the court properly instruct concerning the limited purpose and use of evidence of prior conviction of a felony?*

It came out during defendant Shaw's interrogation as a witness that he had previously been convicted of a felony. He requested, and the court refused, the following instruction: "The court instructs the Jury that the fact that one of these Defendants has stated in reply to a question asked by the prosecution that he was on a former occasion convicted of a felony, is not to be taken by you as any evidence whatever

upon the issue here raised of his guilt or innocence of the crimes charged in the information before us. Such evidence is only admissible by way of impeachment of the credit of such Defendant as a witness and is not evidence of guilt or innocence of the crime charged."

Instead, the court instructed as follows: "The fact that a witness has been convicted of a felony, if such be a fact, may be considered by you in judging the credibility of that witness. The fact of such a conviction does not necessarily destroy or impair the witness' credibility, and it does not raise a presumption that the witness has testified falsely. It is simply one of the circumstances that you are to take into consideration in weighing the testimony of such witness."

Shaw claims he was entitled to have the jury told "in no uncertain terms" that his prior conviction of a felony was "not evidence of guilt or innocence of the crime charged."

The difference between the two instructions is largely one of emphasis. The requested instruction could properly have been given. (*People* v. *Miceli,* 101 Cal.App.2d 643, 650-651 [226 P.2d 14].)

However, we do not consider that the instruction given was improper or misleading, in view of the rulings made in *People* v. *Hardwick,* 204 Cal. 582 [269 P. 427, 59 A.L.R. 1480], and *People* v. *Buzzell,* 15 Cal.2d 654 [104 P.2d 503]. In the Hardwick case an instruction requested and refused was substantially the same as that given in our case. Holding that refusal erroneous, the Supreme Court said: "It is not debatable that the instruction asked by defendant correctly states the law applicable to the situation." (P. 589 of 204 Cal.) In the Buzzell case, instructions given and refused were very similar to those given and refused in our case. Upholding the action of the trial court, the Supreme Court said the lower court had "clearly informed the jury that evidence of a prior conviction suffered by any witness, whether he be the defendant or another, was a factor to be considered only in connection with the weight to be accorded to the testimony of said witness. In our opinion, the instruction properly confined the evidence of a prior felony conviction to the credibility of the witness." (Pp. 661-662 of 15 Cal.2d.)

■ (4) *Did the court commit prejudicial error in the giving of an instruction concerning false confessions?*

The court in its instruction to the jury defined "confessions," forbade the jury from considering a confession unless voluntarily made, advised them they were the judges whether

or not a confession was true, admonished them to view with caution the testimony of witnesses purporting to relate an oral confession or admission, and instructed: "But even if you should find that a confession was false, either entirely or in part, it remains nevertheless evidence for your consideration, to be given such significance as your judgment may determine, under instructions that I shortly shall give concerning false statements made by a person accused of a crime." The giving of the portion quoted is assigned as prejudicial error. We conclude that it was error, but not prejudicial.

Such an instruction was deemed prejudicially erroneous in *People* v. *Ford,* 89 Cal.App.2d 467, 472-473 [200 P.2d 867]. However, in that case there was only slight evidence of guilt aside from the confession and there was additional error which the court held reversible. The vice of the instruction is that in effect it "permits the jury to infer the guilt of an accused from the falsity of his confession, and the italicized portion [the portion quoted above] would appear to be clearly erroneous when given without direct qualification by appropriate limiting instructions. . . . Assuming that under some circumstances a jury might be told that a voluntary but false confession has some probative value, the instruction should, nevertheless, be carefully qualified to point out the evidentiary effect of such a confession." (*People* v. *Woods,* 35 Cal.2d 504, 510-511 [218 P.2d 981].) A false confession "is not evidence from which the jury may infer that the one who falsified committed the illegal act. When the confession is false, it may not be used to prove the truth of that which has been 'confessed.' Without explanation concerning the purpose of admitting a false confession the instruction is erroneous, although under certain circumstances, with adequate clarification for the guidance of the jury, it may be given. If the instruction here challenged was given to inform the jury that a false confession, when relevant, may be used to prove a fact other than the matter confessed, the charge was completely inadequate for that purpose. If the purpose of the instruction was to tell the jury that a false confession may be considered in connection with the issue as to the credibility of a witness, it was likewise incomplete without supplementary explanation." (*People* v. *Liss,* 35 Cal.2d 570, 575 [219 P.2d 789].) In our case we find no instructions given that could appropriately serve to qualify, explain and clarify the questioned instruction. (See *People* v. *Chessman,* 38 Cal.2d 166, at p. 181 [238 P.2d 1001], for "instruction correctly ex-

plaining the possible evidentiary value or immateriality of false statements.'')

However, in the Woods and Liss cases, the instruction was deemed nonprejudicial in view of the fact that there was evidence other than the confessions which amply supported the convictions. Likewise, in our case, there is other evidence, the testimony of Frudakis, amply substantial in character, which supports the verdicts. For that reason we deem the giving of the questioned instruction, though erroneous, was not prejudicial. For like reasons, similar instructions were held erroneous but not prejudicial in *People* v. *Mize*, 100 Cal.App.2d 584, 587-588 [224 P.2d 452], and *People* v. *Harmon*, 110 Cal.App.2d 545, 549-552 [243 P.2d 15].

The judgment and the order appealed from are affirmed.

Peters, P. J., and Bray, J., concurred.