[Crim. No. 5800. Second Dist., Div. Three. Sept. 6, 1957.]

THE PEOPLE, Respondent, v. RALPH W. DORN, Appellant.

Morris Lavine, Bonpane & Dillon and Blase A. Bonpane for Appellant.

Edmund G. Brown, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Respondent.

VALLÉE, J.—In a nonjury trial defendant was convicted of having committed abortion on three occasions in that he did unlawfully provide and supply medicine, drugs, and sub-

stances to Diana Speer with intent thereby to procure a miscarriage. He appeals from the judgment and the order denying his motion for a new trial. His sole point is that the alleged abortee was not corroborated.

Diana Speer testified that in July 1955 she was pregnant; she had no illness; defendant came to her home on four occasions—on July 28, 29, 30, and 31, 1955; on the first occasion defendant asked her how long she had been pregnant; she replied, eight weeks; defendant performed an abortion; she paid him $250; nothing happened that night; defendant returned the next morning; he told her she probably had lost the medication; he again performed an abortion; she asked him if she could refer anyone to him; the next day she telephoned defendant and told him she was very ill; he came to her home; he told her he had been "doing it for 30 years" and had had quite a few flare-ups, he would clean her out again and "then everything would be probably okeh then"; he then went through the same procedure as before; defendant visited her again the next day and went through the same procedure. Mrs. Speer further testified that three days later she was very ill, "had large clots and a lot of blood," had a temperature of 102, and went to her own doctor, Dr. Manuele, who sent her to the hospital. About a month later defendant telephoned her and asked if she had referred Lynn Siebert to him, and she said, "Yes."

Mrs. Daisy Petersen, the mother of Mrs. Speer, was living with her. Mrs. Petersen testified she saw defendant arrive on the first occasion he visited Mrs. Speer; he was carrying a roll of something wrapped in brown rubber sheeting; she saw him arrive on the second occasion carrying the same package; Mrs. Speer and defendant entered the bedroom; her daughter did not seem very well; she saw defendant arrive on the third occasion carrying the same package; she asked defendant what made her daughter so ill; defendant told her "not to worry, that she would be all right"; she saw defendant arrive on the fourth occasion; either on this occasion or the previous one she asked defendant why her daughter was so ill, that she was bleeding a lot; defendant told her "that some girls did, that he had done that for 30 years and some did bleed more than others"; she asked defendant if she could refer others girls to him who were in the same predicament; defendant replied yes, so long as they used her name or her daughter's.

Dr. Manuele testified Mrs. Speer came to his office on

August 3, 1955; she had a temperature of 100.6; her uterus was large, boggy, and she was hemorrhaging quite a bit; he sent her to General Hospital; his diagnosis was "an infected abortion."

Dr. Leavitt treated Mrs. Speer at General Hospital on August 3, 1955; he was of the opinion that she had "an incomplete abortion, induced."

On September 13, 1955, Miss Robinson, an employee of the state medical board, talked to defendant on the pretense she was pregnant and wanted an abortion.[1] She told him her name was Lynn Siebert and that she had been referred to him by Diana Speer. She made arrangements to meet him at a residence in Burbank. Defendant went to the appointed place. He had a brown rubber packet rolled up. Miss Robinson told defendant she had never been through anything like that before and asked him how safe his method was. Defendant replied, "Very safe, he had been doing this for 30 years," and remarked, "Isn't that awful?" Defendant explained how he would perform the operation. He readied Miss Robinson for it. As he was about to begin, officers planted outside the house entered and placed him under arrest. One of the officers asked defendant if Miss Robinson had been recommended to him by Diana Speer. Defendant said, "Probably."

Defendant did not testify.

Upon a trial for procuring an abortion the defendant cannot be convicted upon the testimony of the woman upon whom the offense was committed unless she is corroborated by other evidence. (Pen. Code, § 1108.) ▪ The corroborating evidence is sufficient if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the trier of fact that the witness who must be corroborated is telling the truth. ▪ The corroborative evidence must be considered without the aid of the testimony which is to be corroborated, and it is not sufficient if it requires the interpretation and direction of such testimony in order to give it value. (*People* v. *MacEwing*, 45 Cal.2d 218, 224-225 [288 P.2d 257]. See *People* v. *Goldstein*, 136 Cal. App.2d 778 [289 P.2d 581], written by Mr. Justice Ashburn, in which the principles governing the nature and sufficiency of corroborative evidence are learnedly discussed.)

▪ We think the evidence here meets the test. That an abortion was performed on Mrs. Speer was conclusively estab-

[1]Defendant was charged in Count IV with having attempted an abortion on Miss Robinson. He was found not guilty of that charge.

lished by the testimony of Doctors Manuele and Leavitt. (*People* v. *Morris*, 110 Cal.App.2d 469, 477 [243 P.2d 66].) Mrs. Petersen saw defendant each time Mrs. Speer said he was at the home; each time he carried the same packet, which was similar to the one he had when he visited Miss Robinson; she saw Mrs. Speer and defendant go into the bedroom. Mrs. Petersen observed the effects of defendant's visit on Mrs. Speer; that Mrs. Speer was ill, had a high temperature, and was bleeding a lot. She saw blood on the bedspread. Mrs. Petersen asked defendant what made her daughter ill. Defendant said not to worry, that she would be all right. She asked defendant why Mrs. Speer bled so much, to which defendant replied that he had been doing it for 30 years and some girls bled more than others. He told Miss Robinson he had been doing it for 30 years. On defendant's last visit Mrs. Petersen asked him if she could refer other girls in the same predicament to him. Defendant said yes, as long as she used her name or her daughter's. Mrs. Speer testified defendant had and used various instruments—a metal speculum, a bulb and tubing, a forceps, a wad of absorbent cotton, and a flashlight. When arrested at the home in Burbank defendant had in his possession a forceps, a vaginal speculum, a bulb syringe, cotton batten, a flashlight, and a bottle of green liquid. There was evidence that the bulb syringe and the bottle of green liquid contained a fluid, sodium soap; and that sodium soap is capable of producing a miscarriage when introduced into a pregnant uterus.

■ The fact that defendant did not testify could have been considered by the trial judge as tending to indicate the truth of the testimony of Mrs. Speer and Mrs. Petersen. "While this fact alone does not fill any hiatus in the proof of the prosecution and does not constitute the corroboration required by the statute, it is nevertheless persuasive, lending weight to evidence presented by the prosecution upon matters presumptively within defendant's knowledge, and which if untruly stated would normally be denied by him." (*People* v. *Goldstein*, 136 Cal.App.2d 778, 790-791 [289 P.2d 581].)

■ The weight to be given corroborative evidence is a question for the trier of fact to determine. (*People* v. *McNamara*, 103 Cal.App.2d 729, 738 [230 P.2d 411].) ■ The corroboration was sufficient. Considering it without the aid of the testimony of Mrs. Speer, it tends to connect defendant with the commission of the offenses charged in such a way as

to reasonably satisfy the trier of fact that she was telling the truth.

Judgment and order affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied September 27, 1957, and appellant's petition for a hearing by the Supreme Court was denied November 5, 1957. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.