[Crim. No. 4706. Second Dist., Div. Two. Apr. 7, 1952.]

THE PEOPLE, Respondent, v. HEINRICH VON
MULLENDORF, Appellant.

Allan M. Moore for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

FOX, J.—Defendant was found guilty by a jury of the crime of abortion on two counts. He appeals from the ensuing judgment and the order denying his motion for a new trial.

On January 20, 1951, the complaining witness, Joan, accompanied by one Jacobson, visited the office of Dr. Clark for the purpose of having a physical examination. The doctor determined she was three months pregnant. Thereafter Jacobson had a conversation with defendant explaining that the young lady was pregnant. An appointment was made for him to bring her to defendant's office on Hollywood Boulevard on Saturday morning, February 10th. Joan borrowed $240 for an abortion from her friend, Janice, and together they delivered it in a brown paper bag to Jacobson at a drive-in on the preceding Friday evening; it was in denominations of one and five dollar bills, as requested by him. Saturday morning Jacobson took Joan to defendant's office. He examined her and told her she was two and a half months pregnant. Defendant asked her, "Do you want the abortion?"

She said "Yes." He then said, "Well, it will have to be done today or not later than Monday. It can't wait." Defendant told her to "come back to the office about 12:00" and not to eat anything in the meantime. She left defendant's office with Jacobson who still had the paper bag with the money in it. Jacobson then went to defendant's office alone and paid him the money. A few minutes after 12 o'clock Jacobson returned Joan to defendant's office. He told her to disrobe and lie on the table; he gave her an injection which resulted in her losing consciousness. However, she regained consciousness and felt pain and knew that something was going on in her pelvic region. After it was over Jacobson asked defendant how it went and he replied "Fine, fine. But it was an awful mess. She is a healthy girl."

On the following Monday Joan was in bed at a friend's apartment in Pasadena. Because she was suffering pain Janice called defendant. Upon his arrival he took Joan's temperature, felt her pulse, and palpated her stomach in various parts. On learning that it pained her he said, in the presence of Janice, "he hadn't got it all the first time, that he would have to operate again." He asked Janice whether there was a place to sterilize his instruments. After some conversation and defendant's refusal to take the patient to his own office, he agreed to convey her to a motel "if it was one with a kitchenette where he could sterilize." Janice located a motel and Joan was removed to it by defendant. There, defendant required a rubber sheet and something in which to sterilize the instruments. After spreading the rubber sheeting on the bed he had Joan undress and lie down for further treatment. She saw an 18-inch long chromium scissors-like instrument. From his anaesthetic she became unconscious. When she awoke Jacobson was there and defendant was closing his black bag. Blood was on a few of the things in the room. The next morning Janice and Jacobson removed Joan to his apartment in Hollywood. When they left the motel they took a little brown paper bag that had the contents taken from Joan and disposed of it in a trash can on the way to Hollywood. Jacobson testified defendant told him to dispose of the contents of this bag in which he saw evidence of human flesh.

Joan testified that her purpose in going to defendant's office on the first occasion was to have an abortion; that she had taken no medication prior to that time for the purpose of causing an abortion, and that she had not suffered any cramps.

Joan was removed to the county hospital where an examination disclosed an incomplete abortion and pelvic peritonitis. There was also evidence of instrumentation on the cervix.

Defendant's office record book did· not contain the names of either Joan, Jacobson, or Janice on February 10th, but it did reveal the names of other patients treated on that date. Defendant admitted requesting a motel with a kitchenette where he could have hot water and sterilize, and he also admitted taking Joan and Janice to the motel.

 The first contention of defendant is that "The verdict is contrary to and unsupported by the evidence, and is contrary to law." The simple answer to this contention is found in the foregoing résumé of the evidence. It demonstrates an abundance of proof to support the verdict. Defendant's denial of certain testimony on behalf of the People only served to create a conflict in the evidence which the jury resolved against him. Such determination is of course binding on this court.

 It is argued that no intent is shown on the part of defendant to commit an abortion on Joan. It is true that intent is an element of this offense. (*People* v. *Browning,* 132 Cal.App. 136, 147 [22 P.2d 784].) Criminal intent, however, is seldom susceptible of direct proof. (*People* v. *Murphy,* 60 Cal.App.2d 762, 770 [141 P.2d 755]), hence the necessity of inferring it from the circumstances connected with the offense. (Pen. Code, § 21.) Defendant testified that after examining Joan he knew she was pregnant. This·admission, coupled with the circumstances surrounding the payment of his fee by Jacobson; the absence of her name upon defendant's office records; his statement as testified to by Janice that "he hadn't got it all the first time, that he would have to operate again"; the circumstances surrounding Joan's transfer to the motel and what transpired there; the testimony regarding the disposition of the brown bag and its contents, and the testimony of Dr. Crawford, who examined her at the Los Angeles County Hospital, that his examination disclosed an incomplete abortion, — these amply justify the implied finding that defendant intended to commit an abortion on Joan.

 Defendant's second contention is that his substantial rights were irreparably prejudiced by the failure of the court to appoint an interpreter. There are two complete answers to this: the first is that no request was made for such an

appointment; the second is that an examination of defendant's testimony fails to disclose any need for an interpreter. His answers are intelligent and coherent. There is no indication that anyone was unable to understand what he said. He was not a newcomer to this country. He had been admitted to practice medicine in California since 1933.

Defendant's third claim is that the court erred with respect to certain of his proposed instructions. He complains first about the modification of Instruction No. 1. The court marked out the language through which a line is drawn and inserted the words indicated. This instruction stated that "Under the law it is legal to procure an abortion ~~under certain circumstances under Section 274 Penal Code~~ if the same is necessary to preserve the life of a woman and therefore it is ~~perfectly~~ lawful for a doctor to have in his possession certain instruments which are capable of being used to bring about an abortion." The modification was entirely proper. It served to make the instruction more specific and understandable. Defendant, however, contends this modification served "to propose the issue of the legality of an abortion if the same is necessary to preserve the life of a woman, which was not an issue in this case or a defense by defendant herein." The change in the language clearly did not have that effect, and, in any event, it could not possibly have been prejudicial to defendant.

It is argued that there is confusion in two of the earlier instructions as to whether or not Jacobson is an accomplice. Any possible uncertainty about his status is completely clarified in a later instruction which advised the jury that under the evidence he was an accomplice as a matter of law.

Defendant's final contention is that he was improperly charged in two counts with a crime that amounted to but one offense and consequently he suffered double jeopardy. To support this proposition he says ". . . the facts surrounding the issuance of said informations by the People were based on one continuous act upon the person of one Joan . . ." This is not factually correct. Count one charges defendant with performing certain illegal acts on Joan at his office on February 10, 1951; Count two deals with what was done to his victim by defendant on Monday, February 12, at the motel. It is clear that defendant committed two separate and distinct acts upon this young woman with the intent to procure a miscarriage and was therefore properly charged in two

counts. In *People* v. *Rhoades*, 93 Cal.App.2d 448, 450 [209 P.2d 33], this identical problem was considered. It was there pointed out that the gist of the crime is not the actual consummation of an abortion as such but rather it is the performing of any of the acts prohibited by section 274, Penal Code,* with the intent to procure a miscarriage which constitutes the crime of abortion.

The judgment and the order denying the motion for a new trial are affirmed.

Moore, P. J., and McComb, J., concurred.

*Section 274, Penal Code, reads: "Every person who provides, supplies, or administers to any woman, or procures any woman to take any medicine, drug, or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the state prison not less than two nor more than five years."