[Crim. No. 6775. Second Dist., Div. Two. Feb. 8, 1960.]

THE PEOPLE, Respondent, v. WEYMAN OTIS WILKES, Appellant.

692

694

Morris Lavine for Appellant.

Stanley Mosk, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

FOX, P. J.—Defendant was convicted of three counts of violation of section 274[1] of the Penal Code (abortion). He has appealed from the judgment.

It was initially alleged that defendant violated Penal Code, sections 274 and 664 (attempted abortion), by supplying and administering a "vaginal pack" to one Hilda Mary Muise. The district attorney made a motion to amend the information by interlineation by substituting the words "a substance" in place of "vaginal pack." The motion was denied. The district attorney then moved to dismiss. This motion was granted November 12, 1958.

A new information was filed on December 19, 1958, in which defendant was charged with three counts of abortion.[2] The acts were alleged to have occurred on April 11, 12 and 19, 1958, respectively, and involved the supply and administration of "a substance" to the same female with the intent to procure a miscarriage. A jury found defendant guilty on all three counts. Probation was denied and defendant was sentenced to the state prison on each count; the sentences, however, were ordered to run concurrently. It is from this judgment that defendant has appealed.

In March, 1958, Hilda Mary Muise discovered that she was pregnant. She advised one Jerry Benson of her condition. They decided she would get an abortion. During the early

---

[1]Penal Code, section 274, provides: "Every person who provides, supplies, or administers to any woman . . . any medicine, drug, or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable. . . ."

[2]There were two additional counts involving asserted violations of other sections of the Penal Code, but neither of these other charges is involved in this appeal.

part of April Benson received a telephone call at his place of employment from a person with a male voice. Thereupon Benson went to his bank where he withdrew $700. On April 11th, at approximately 6 p.m., he returned to Mrs. Muise's home, at 642 Date Street, in Pomona, to keep an appointment with the man with whom he had talked on the telephone. Benson had $500 in cash with him. A short time thereafter defendant arrived carrying a black bag. He and Mrs. Muise went into her bedroom. There, with the aid of a vaginal speculum, defendant inserted a pack. He told her that she would get a little choking feeling in her throat and her throat would become dry; also, that she would start getting cramps more and more until eventually she would lose her pregnancy. Except for her pregnancy, Mrs. Muise was in good health.

Benson placed $500 on the kitchen table while defendant and Mrs. Muise were in the bedroom. Defendant came into the kitchen, picked up the money and counted it, and then put it in his pocket. Benson asked defendant what he should do if Mrs. Muise developed some kind of trouble or began to hemorrhage. Defendant told him to call a doctor[3] or take her to a hospital but not to mention that she had had an abortion. In response to Benson's inquiry, defendant informed him that the operation was guaranteed.

Defendant returned to the Muise home the next evening, April 12th. She told him nothing had happened. Defendant then indicated he would insert another "packing." They went into the bedroom where the same procedure as the night before was followed by defendant. He told her it should work and he had never known it not to work. Upon one of the occasions Mrs. Muise recalled seeing the packing which she described as being long and narrow. Defendant did not tell her what was in the packing but merely stated it would be like a jelly substance, brownish in color. She noticed, following these treatments, that she was passing a substance "like brown jelly." On all the occasions that defendant inserted the packing Mrs. Muise could feel the object in her private parts.

On April 15th, defendant came by the Muise home about 1 p.m. She informed defendant that nothing had happened. Defendant told her and Benson that he had sent to New York for a stronger solution, and he would see them when he received it.

On Saturday morning, April 19th, defendant again called

[3]Defendant was a chiropractor.

on Mrs. Muise. Upon being informed that nothing had happened, defendant again went through the same packing process as upon the two previous occasions. Before defendant left, Mrs. Muise got a choking feeling such as defendant had told her she would get. He mentioned that this time it "should work," and that "it" was guaranteed. He also instructed her and Benson as to what to do in the event Mrs. Muise hemorrhaged a lot. The next day she passed a fetus. On May 4, Dr. Rebhun was called. He found her to be pale and weak and that she appeared to have lost a great deal of blood. She was immediately taken to the hospital where she was operated on a few hours later by Dr. Naujokaitis, who was a specialist in obstetrics and gynecology. It was his opinion that the pregnancy had been terminated a couple of weeks prior to his operation but the miscarriage had been incomplete.

Defendant testified in his own behalf. He stated that he had been a Doctor of Chiropractic for 11 years with offices in San Gabriel and Pomona, and that he had delivered babies in connection with his work. Defendant acknowledged that he had treated Mrs. Muise on the dates heretofore mentioned. He testified that on his initial call she told him she had taken some quinine capsules because she wanted to kill herself and that she had placed a catheter in her vagina or uterus. Defendant said he thought she might be aborting so he made an examination, using the speculum to examine her cervix. He found considerable inflammation so he made a rosebud pack and placed it against the cervix, removed the speculum, and put her back in bed. He denied that anything he did was with the intent or for the purpose of producing an abortion. He said the treatment he gave Mrs. Muise was necessary to preserve her life. He denied receiving any money from either Benson or Mrs. Muise.

Defendant admitted that when he was arrested by Officer Whitehead on July 24, 1958, the officer asked him whether he knew a Hilda Mary Muise, and he had told the officer that he did not; also that the officer asked him whether he had treated a patient on Date Street, and he told the officer that he had not. Defendant, however, testified that he had billed Mrs. Muise for his services at the 642 Date Street address some time prior to the time he told Officer Whitehead that he had never been to Date Street. He explained that the reason he told the officer he had not gone to Date Street was that he was confused about the address. Defendant admitted he told the officer that he did not know Jerry Benson.

Defendant moved to set aside the information on the ground that he had been denied a speedy trial and that the dismissal of the prior information was a bar to further proceedings in this case. His motion was denied.[4]

■ At the outset, defendant argues that the dismissal of the first information on November 12, 1958, was res judicata and that the trial that started in February, 1959, resulting in the judgment from which this appeal is taken violated his "constitutional guarantee of a speedy trial within 60 days." Defendant relies on a number of out-of-state cases. His argument, however, is effectively answered by Penal Code, section 1387, and the decisions of our courts. The cited code section provides: "An order for the dismissal of the action . . . is a bar to any other prosecution for the same offense if it is a misdemeanor, but not if it is a felony." In commenting on this statutory provision the court, in *People* v. *Vacca*, 132 Cal.App. 2d 8 [281 P.2d 315], stated (p. 9) : "Under this section, while the accused is protected from having criminal charges pending against him an undue length of time (and receive such protection in this case by having the information dismissed), such dismissal does not bar subsequent prosecution for the same offense, when the subsequent charge is a felony and is filed within the period of the statute of limitations." (Citations.) Here the offenses charged are felonies and the statute of limitations for abortion is three years. (Pen. Code, § 800.) In *People* v. *Ferrera*, 149 Cal.App.2d 850 [309 P.2d 533], the court held, at page 852, that the order granting the motion to dismiss the first information was not res judicata, and that no constitutional right of the defendant was invaded by prosecution on a second information. (See also *People* v. *Cochran*, 162 Cal.App.2d 733, 736 [328 P.2d 532].)

■ With respect to the 60-day period for bringing a case to trial (Pen. Code, § 1382, subd. 2), the court stated in *People* v. *Pierson*, 149 Cal.App.2d 151, 159 [307 P.2d 994] : "It seems to be the rule that the 60-day period is reinstated not only by a mistrial [citation], but by the filing of a new or amended pleading, whether or not a new or different charge is involved." (Citations.)

Since the order dismissing the first information was not res judicata (*People* v. *Ferrera, supra*), it follows that there is no foundation for defendant's further argument that the jurisdiction of the court was exhausted by such dismissal.

---

[4]This ruling was not made by the trial judge herein.

■ Defendant filed a demurrer to the information on the ground that "the information charged the same offense twice." The court overruled his demurrer. The information charged defendant with three separate counts of administering "a substance" to Mrs. Muise. Each count was alleged to have involved the administration of "a substance" on different days, i.e., April 11, 12, and 19, 1958. He argues that in each count the act was the same; that it involved the same pregnancy, and that it was a splitting of the alleged offense into three parts. He therefore concludes that the demurrer to the information should have been sustained. In making this argument defendant misconceives the real basis of the offense. The gist of the crime is not the actual consummation of an abortion as such but rather the performance of any of the acts enumerated in section 274, Penal Code, with the intent to procure a miscarriage. The specific argument that defendant here makes was advanced in *People* v. *Rhoades*, 93 Cal.App.2d 448 [209 P.2d 33]. In ruling against the contention the court stated, at pages 450-451:

"Defendant's argument in support of her first contention is that the crimes charged in counts one and two were in fact but one crime, in that by the testimony of the prosecution witness it was shown that although she received two treatments such treatments were administered with the intent to abort but a single pregnancy, and that therefore she was placed in double jeopardy by being charged and convicted twice for what was but one offense. Such contention is without merit since section 274 of the Penal Code provides that:

" 'Every person who provides, supplies, or administers to any woman, or procures any woman to take any medicine, drug, or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the state prison not less than two or more than five years.'

"It is readily apparent that the gist of the crime is not the actual consummation of an abortion as such but rather it is the performing of any of the acts prohibited by said section with the intent to procure a miscarriage which constitutes the crime of abortion. Therefore despite the fact that the same single pregnancy was involved in counts one and two, nevertheless, as the information charged and the evidence conclusively shows, in each instance there was an 'intent to procure' a miscarriage by prohibited means which fact is

admitted by counsel for defendant. Consequently the complaint properly charged defendant with the commission of two separate crimes. (Citations.)''

In *People* v. *Von Mullendorf,* 110 Cal.App.2d 286 [242 P.2d 403], an abortion case, it appears that count one charged defendant with performing certain illegal acts on the victim at his office on February 10, 1951, and count two dealt with acts committed by the defendant on Monday, March 12th, at a motel. Defendant contended, as he does in the instant case, that he was improperly charged in two counts with a crime that amounted to but one offense. In sustaining the conviction on both counts, this court stated (p. 290): ''It is clear that defendant committed two separate and distinct acts upon this young woman with the intent to procure a miscarriage and was therefore properly charged in two counts.''

In view of these authorities it is clear that the court properly overruled defendant's demurrer to the information.

█ In passing on defendant's contention that the evidence is insufficient to sustain the verdicts, ''we must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence. . . .'' (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

[██ Thus viewed, the evidence is clearly sufficient to sustain the conviction. The meeting of Mrs. Muise and Benson with defendant; the statements of defendant as testified to by them; the state of Mrs. Muise's health prior to defendant's treatment; Benson's payment to defendant for the treatments; defendant's cautioning Benson to call a doctor in the event of an emergency, and not to mention that Mrs. Muise had an abortion; the passing of the fetus after being treated the third time by defendant, and Dr. Naujokaitis' subsequent treatment of Mrs. Muise and his opinion that she had been pregnant and had had an incomplete miscarriage, together with the inferences that the jury could reasonably draw therefrom, amply sustain their verdicts.

█ Defendant particularly argues that ''there is no evidence in the record as to what substance was used, or that the substance used did or could procure the miscarriage of Hilda Mary Muise.'' However, the evidence shows that on April 11 the defendant inserted a pack into her vagina; told her that she would have cramps until she would lose her pregnancy; that he repeated this treatment on her the next day, telling her that ''it'' should work and that he had never known ''it'' not to work. When Mrs. Muise told defendant

on April 15 that nothing had happened he informed her and Benson that he had sent to New York for a stronger solution. On April 19 defendant went through the same procedure as upon the previous occasions. He told Benson "it should work this time." Mrs. Muise recalled passing a substance "like brown jelly" following the treatments on April 11th and 12th. Defendant never advised her what was in the pack he used but did tell her it contained a "jelly like substance, brownish in color." She passed a fetus on April 20th. Dr. Naujokaitis was of the opinion that her pregnancy had been terminated a couple of weeks prior to May 4th.

From this evidence the jury could reasonably infer that the substance which the defendant used in the packs which he inserted was of such a character that it could and did, in fact, produce a miscarriage. The fact that the "substance" was not given a name or more particularly identified than as previously noted does not detract from the inference that it had sufficient potency to produce the intended result. (See *People* v. *Wilson,* 54 Cal.App.2d 434, 447-448 [129 P.2d 149].)

Defendant emphasized his own testimony that he did not do anything to produce an abortion. He admitted using a "pack" but stated it was a "rosebud pack" to "support" the uterus, and not to procure an abortion. He also says that his testimony as to her physical condition and the necessity to give her the treatments that he did in order to save her life, is not contradicted by any other expert or person qualified to do so. But the testimony of the defendant only served to create a conflict in the evidence which the jury was called upon to resolve. Its resolution is binding on appeal. [█] The jury was not required to give full credence to the defendant's testimony, even though some portions of it were uncontradicted, in view of his obvious interest in the outcome of the case. █ It is the exclusive province of the jury to determine the credibility of a witness and the truth or falsity of the evidence upon which a determination depends. (*People* v. *Cahan,* 141 Cal.App.2d 891, 897 [297 P.2d 715].)

█ Finally, in this connection, defendant says that: "In any event, as to counts 1 and 2 of the information, there could be no more than an attempt."

In *People* v. *Berger,* 131 Cal.App.2d 127, 129 [280 P.2d 136], the court stated: "The Legislature could have made the actual inducement of a miscarriage the substantive offense, in which event the acts prohibited by Penal Code, section 274, would have constituted an attempt (in which case other

preceding acts might also be sufficient to constitute an attempt). But the Legislature has chosen to make *those acts* performed with intent to procure a miscarriage the *substantive* offense. . . .'' (Emphasis added.)

The evidence of the acts performed upon the victim on April 11 (count 1) and on April 12 (count 2) is ample to establish violations of the substantive crime denounced by section 274 of the Penal Code. These acts were not merely an attempt to violate said section. (*People* v. *Rhoades, supra*; and *People* v. *Von Mullendorf, supra.*)

Defendant complains that the court erred in refusing to give certain of his requested instructions. The first of these reads as follows: ''You are instructed that Dr. Wilkes is an expert whose opinion you must consider in the same light as any other expert, and under the same law as governs all expert testimony.'' The court gave the instruction as to expert testimony embodied in Penal Code, section 1127b. No further instruction on the subject of opinion evidence was required. (Pen. Code, § 1127b.) Furthermore, ''it is established that a defendant testifying on his own behalf is placed in the same category as other witnesses and a trial judge should not single out the testimony of the defendant and make reference thereto. (Citations.)'' (*People* v. *Young*, 88 Cal.App.2d 129, 134 [198 P.2d 384].)

The next refused instruction would have told the jury that if they found the defendant guilty on one count their verdict as to the other two counts must be ''not guilty.'' This proposed instruction was obviously improper for it assumed that only one substantive offense was alleged, whereas there were three separate substantive offenses alleged, as heretofore pointed out. (*People* v. *Rhoades, supra*; *People* v. *Von Mullendorf, supra.*)

The next proposed instruction which the court refused dealt with the theory that no abortion resulted from the acts alleged in counts 1 and 2, and that the offenses alleged could only have been attempted abortion. As previously pointed out, the acts charged in each of the counts were separate and distinct offenses in violation of section 274. The prosecution was relying upon the commission of those substantive offenses and not upon any theory of a mere attempt. The proposed instruction was patently inapplicable. For these reasons the court properly refused to give defendant's requested instruction embodying a definition of ''attempt.''

The final proposed instruction which the court re-

fused sought to lift from the evidence certain matters that had been testified to and embody them in this proposed instruction, thus serving to call them specifically to the jury's attention. ▊ An instruction that singles out and gives prominence to certain portions of the evidence may properly be refused. (*People* v. *Hawes*, 98 Cal. 648, 654 [33 P. 791].)

Examination of the record discloses that the jury was fully and fairly instructed.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 30, 1960.