[Crim. No. 7050. Second Dist., Div. Three. Nov. 14, 1960.]

THE PEOPLE, Respondent, v. SAMUEL D. COLLINS, Appellant.

Paul D. McCormick for Appellant.

Stanley Mosk, Attorney General, and Clara E. Kauffman, Deputy Attorney General, for Respondent.

FORD, J.—The information in this case contained eight counts. In each count the appellant was charged with the crime of abortion. (Pen. Code, § 274.)[1] It was also alleged that the appellant had been previously convicted of felonies as follows: in 1934, of abortion; in 1946, of abortion and murder; in 1946, of abortion. He pleaded not guilty as to each count and denied the first allegation of a prior conviction but admitted the second and third such allegations. The appellant thereafter waived his right to trial by jury and, having withdrawn his denial, admitted the first allegation of prior conviction. He was found guilty as to each count. His motion for a new trial was denied and he was sentenced to the state prison for the term prescribed by law with respect to each count. He appeals from the judgment and from the order denying his motion for a new trial.

[1]Section 274 of the Penal Code is as follows: "Every person who provides, supplies, or administers to any woman, or procures any woman to take any medicine, drug, or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the state prison not less than two nor more than five years."

The appellant makes three main contentions. He asserts that there was not sufficient corroboration of the testimony of the women alleged to have submitted to the acts of abortion and of the testimony of accomplices. He claims that certain evidence was the product of an unlawful search and seizure and, further, that such evidence was inadmissible in any event because no proper foundation was laid to connect such evidence with the acts charged to have been done by the appellant in the present case. Finally, he contends that there was prejudicial error in that a single crime was improperly split into several parts, there being eight counts charging the crime of abortion with respect to the three women named in the information. In view of such contentions, it is necessary to give a summary of the evidence.

In the first count, it was alleged in part that on or about August 8, 1958, the appellant did unlawfully "provide, supply, use and employ an instrument and other means upon the person" of one Elaine with the intent to procure her miscarriage. In the second count, the woman named was the same Elaine but the offense was stated to have been committed on or about August 9, 1958. Elaine testified that on August 6, 1958, she believed that she was pregnant and had been for three months. She was in good health. She discussed the matter with her husband and decided to terminate the pregnancy. She made a phone call to a particular number. A male voice, which she later recognized to be that of appellant, responded. It was arranged that she should "come in" on August 8 at 9 o'clock in the morning. She had been referred to the appellant by someone. At the appointed time, she went to his house with her husband. A woman admitted them, the woman being "short and stocky and with darkish grey hair." They met the appellant. She gave him $500 and went upstairs. Her husband went upstairs with her and then left. The appellant gave her "a little wine to relax" her. She was placed on a table which was equipped with stirrups and the appellant inserted in her a dilator and "then inserted something in it." She felt pressure and a little pain in the region of her vagina. She was on the table no longer than 15 minutes. He inserted something in her, "such as a packing of some sort," which was removed the next morning. It had a string on it. On the morning of the second day she was again placed on the table. She testified that he then "began working with some other instruments again dilating me, and that is when I could feel this tremendous pulling sensation and the pain that was in-

volved therewith.'' The pulling sensation was in her uterus and vagina. She was on the table the second time 20 to 22 minutes. Her husband called for her and drove her home. Her pregnancy was terminated.

The husband of Elaine testified that he discussed his wife's pregnancy with her and decided to terminate it. He took her to the appellant's house, went inside, and met the appellant. He went upstairs with his wife and then walked back downstairs with the appellant and told him to take good care of her. He gave his wife $500 on that day. When he took his wife home the following morning, she was tired and ''looked rather pale, might say haggard.'' On that occasion he saw the appellant who said, ''I will see you next year.'' He knew he was doing something illegal when he took his wife to the appellant's home. He took her there for the purpose of having something done with respect to her ''not having a child.''

Counts three, four, five and six related to acts upon the person of one Gail, the dates of the alleged crimes being, respectively, on or about September 27, September 28, September 29, and September 30, 1958. Gail testified that, at the time of the trial, she was about 18 years old and that her place of residence was in another state. On or about September 27, 1958, she went to the appellant's house with Mrs. L. She met the appellant and gave him $500. She was in good health. She was pregnant and had determined to terminate her pregnancy. On that first day, the appellant gave her ''a little bit of wine'' to calm her and she was placed on a table with her feet in stirrups. There was a cabinet of tools in the room. She heard the clinking of instruments and felt something being inserted into her private parts. She could feel an instrument. She had a sensation of pain in ''the vagina region and the uterus.'' She was on the table about 15 minutes. Later the appellant removed a catheter and some cotton from her private parts. The next day the appellant placed her on the operating table and inserted some instruments into her private parts which resulted in more cramping. This procedure took about 15 minutes. She felt pain in the uterus. That evening the same procedure was repeated. On the following day there was a similar occurrence. Thereafter, she returned to the place where she was staying in southern California and on the next day passed the fetus. When she returned to her home state, she had a dilation and curettement. A friend, Mrs. L., made the arrangements for her to go to the appellant and went with

her. Gail went to a physician near Mrs. L.'s home both before and after she stayed at the appellant's house.

Mrs. L. testified that when she met Gail on her arrival in this state, Gail was pregnant. Before she took Gail to appellant's house, she had talked to him on the telephone. She told him that Gail was pregnant and that she was afraid that Gail "might be too far along." The appellant told her not to worry about it and that it was a very simple procedure. The appellant said that the charge would be $500. On September 27, 1958, she drove Gail to the appellant's house and went in with her and met the appellant. She thought that the appellant was a doctor. She met another woman there who was "short and dark and rather fleshy." The appellant told her not to worry about Gail. Mrs. L. left her telephone number where she could be reached. Gail had $500 with her. After three or four days, she returned for Gail. Before Gail saw the appellant, Mrs. L. had taken her to a physician near Mrs. L.'s home. When she took Gail to the appellant, she knew she was committing an unlawful act. She took her there to make arrangements with someone there to stop the pregnancy.

The physician who was mentioned in the testimony of Gail and Mrs. L. testified that he was a medical doctor and had examined Gail on September 16, 1958. In his opinion, she was approximately four months pregnant. He saw her again on September 30 but did not examine her because of what she told him.

Counts seven and eight related to acts upon the person of one Patricia, the dates of the alleged crimes being, respectively, December 18 and December 19, 1958. Patricia testified that on December 7 or December 8 she believed herself to be pregnant, the pregnancy being of about three and a half months' duration. She discussed her pregnancy with Mr. C. She decided that she would terminate the pregnancy. She was in good health. About December 18, she went to the appellant's house with Mr. C. At the house she met a woman who was "[s]hort and heavy set . . . and she had slightly grey hair. She gave the appellant $400. Thereafter she went upstairs. The appellant gave her a drink of wine to relax her. Later, at the appellant's request, she placed herself on a table which was equipped with stirrups. He inserted something into her "which was cotton and a rubber tube." She felt something in her vagina. She felt as though an instrument was inserted in her. She was on the table 10 or 15 minutes.

What he left in her was a red rubber tube and a cotton ball. About 24 hours later, the appellant removed a cotton ball with an attached string. Later she returned to the operating table. The appellant removed instruments from a cabinet. He used an instrument to open her private parts and inserted something into her private parts. The sensation in her lower abdomen or her vagina was painful. She heard the sound of instruments "hitting together." She then returned to bed but later the appellant took her into the room again and there was an occurrence as on the second occasion. Thereafter she went to a physician who sent her to a hospital in January or early February. There she had a curettement. Mr. C. was the cause of her pregnancy and she had discussed with him the fact that she was pregnant. They decided they would do something about it. Mr. C. gave her $400.

Mr. C. testified that he had a discussion with Patricia early in December of 1958 with respect to terminating her pregnancy. They reached an agreement that it would be done. He drove her to the appellant's house twice, once on an evening and again when he left her there. When he took her home thereafter, she appeared to be tired. He put his arm around her to help her down the stairs into the car which was in the driveway and the appellant asked him not to help her so obviously as he was doing but to let her walk on her own power. He gave Patricia $400 to be used for the purpose of having something done upon her body with respect to a pregnancy. He knew it was illegal.

The physician to whom Patricia went after leaving the appellant's house was called as a witness. He had also examined her prior to that time. On October 28, 1958, he was of the opinion that she had probably been pregnant for about six weeks. He felt that she probably could have gone a full term with her pregnancy. He later saw her on January 20, 1959. His impression at the time was that there had been an incomplete abortion. A dilation and curettage was done on January 23, 1959.

Howard E. Hooper, a member of the staff of the bureau of investigation of the office of the district attorney, testified on behalf of the prosecution. In the latter part of May 1959, he saw the appellant at his house. He had a warrant for the appellant's arrest. He took a number of photographs inside the house. He also obtained certain instruments in the house. He identified a vaginal speculum, a uterine sound, cotton packing tools, two curettes and other surgical instruments, all of which

came out of a cabinet upstairs. At the time he found these instruments, the appellant was downstairs under arrest. Mr. Hooper told the appellant he was going to take the articles as evidence. The appellant insisted that he have a receipt for them. Also found upstairs were about a thousand cotton balls and about 25 catheter tubes. The appellant said that the cotton was for his parakeets and was used in the making of nests. The witness had no search warrant. The appellant told him not to search his place.

On behalf of the appellant, objection was made to the introduction in evidence of the objects seized in the course of such search on the ground that such search and seizure constituted an illegal invasion of the appellant's rights. A further ground stated was that no sufficient foundation had been shown so as to connect such articles with the offenses charged. The objection was overruled. A later motion to strike such exhibits, which was made on the same grounds, was denied.

The appellant did not testify as a witness on his own behalf. His niece testified with respect to the appellant's conversation with Mr. Hooper as to the use made of the cotton. She elaborated upon such use in connection with the nests of the finches, canaries and parakeets kept in cages at the appellant's home. The wife of the appellant testified briefly upon the same subject. She further said that Mr. Hooper told the appellant to sit in a chair and not to move and that Mr. Hooper then left the room.

The evidence with respect to each count must, of course, meet the requirements of section 1108[2] and section 1111[3] of the Penal Code relating to corroboration if the conviction under such count is to stand. In determining the sufficiency of corroborative evidence, the same tests are applicable to both section 1108 and section 1111. In *People* v. *MacEwing*, 45 Cal.2d 218, at page 224 [288 P.2d 257], the applicable rule is stated as follows: ''The corroborating evidence is sufficient

[2]Section 1108 of the Penal Code is in part as follows: ''Upon a trial for procuring or attempting to procure an abortion, or aiding or assisting therein, . . . the defendant cannot be convicted upon the testimony of the woman upon or with whom the offense was committed, unless she is corroborated by other evidence.''

[3]Section 1111 of the Penal Code is as follows: ''A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.''

if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness who must be corroborated is telling the truth.''

The court further states, at page 225, the well-established rule that ''corroboration is not adequate if it requires aid from the testimony of the person to be corroborated in order to connect the defendant with the commission of the offense charged.'' (See also *People* v. *Brown,* 49 Cal.2d 577, 583 [320 P.2d 5].) While the corroborative evidence need not by itself establish that the crime was committed or show all the elements thereof, it must relate to some act or fact which is an element of the offense. Although it may be sufficient even though it is slight and entitled to but little consideration when standing by itself, it must create more than a suspicion. (*People* v. *Gallardo,* 41 Cal.2d 57, 63 [257 P.2d 29].)

The sources from which the necessary corroboration may come have been clearly stated in *People* v. *Gallardo, supra,* 41 Cal.2d 57 [257 P.2d 29]. As therein said (p. 63), a woman who has submitted to an abortion is not an accomplice of the person or persons charged with procuring the miscarriage. Her testimony can be corroborated by that of a witness who was an accomplice and the testimony of the accomplice can be corroborated by that of the woman. Moreover, as further stated in the Gallardo case (p. 64): ''Although the testimony of one woman that a person performed an abortion upon her is not of itself sufficient to corroborate the testimony of a second woman that the same person committed an abortion upon her [citations], it has been held that there is sufficient corroboration if the independent testimony of the women shows that each abortion was committed in a similar manner.'' (To the same effect: *People* v. *Weiss,* 50 Cal.2d 535, 568 [327 P.2d 527] ; *People* v. *Bowlby,* 135 Cal. App.2d 519, 527 [287 P.2d 547, 53 A.L.R.2d 1147].) ''One of the reasons for this is that the testimony of two people who independently went through the same procedure tends to establish the credence of both.'' (*People* v. *Kendall,* 111 Cal. App.2d 204, at 211 [244 P.2d 418].)

A study of the evidence in the present case which has been set forth above leads to the conclusion that the requirements of section 1108 and section 1111 of the Penal Code with respect to corroboration were amply met. The corroborative evidence as to each count was complete in itself and did not require resort to the testimony of the witness who had

to be corroborated for interpretation and direction. Such examination of the evidence when made in the light of the applicable rules leads so readily to the conclusion stated that no extended discussion of the matter is required in this opinion. It is sufficient to point out that each person who accompanied one of the women to the appellant's house testified that the appellant was present on such occasion, that the woman was left in the appellant's care for an extended period of time, that each woman had a substantial sum of money with her, and (except for the testimony of Mrs. L.) that upon leaving the appellant's house the woman appeared to be in a weakened physical condition. Mrs. L. testified that she made the arrangements with the appellant for an abortion with respect to Gail. Each woman's testimony clearly corroborated that of the person who knowingly brought her to the appellant's house for the illegal purpose. The testimony of the women showed that each abortion was committed in a similar manner.

In reaching the determination that the corroborative evidence was sufficient, we have treated as an accomplice the person who accompanied a particular woman to the appellant's house inasmuch as the evidence supports the conclusion that such person was aware of the purpose and actively cooperated in accomplishing the result. By such conduct, such person aided and abetted in the commission of the offense. (*People* v. *Davis,* 43 Cal.2d 661, 672 [276 P.2d 801]; *People* v. *Wilson,* 25 Cal.2d 341, 346 [153 P.2d 720].) Upon the subject of corroboration, we have disregarded the testimony of the physician who examined Gail and saw her again after the alleged offense as well as that of the physician who examined Patricia because such testimony failed to connect the appellant with the alleged abortions. (*People* v. *Brown, supra,* 49 Cal.2d 577, 584 [320 P.2d 5].) ▇▇ In that connection, we have not considered the failure of the appellant to testify because, as said in *People* v. *Goldstein,* 136 Cal.App.2d 778, at page 790 [289 P.2d 581], such failure does not constitute the corroboration required by the statute although "it is nevertheless persuasive, lending weight to evidence presented by the prosecution upon matters presumptively within defendant's knowledge, and which if untruly stated would normally be denied by him." (See also *People* v. *Dorn,* 153 Cal.App.2d 613, 617 [314 P.2d 1017].)

▇▇ We turn now to a consideration of the appellant's assertion that evidence which was received against him was obtained as a result of an unlawful search and seizure. The

point is without merit. The arrest pursuant to the warrant was valid and the accompanying search of the premises incident thereto was proper, there being no requirement under such circumstances that a search warrant be first procured. (*People* v. *Winston*, 46 Cal.2d 151, 162-163 [293 P.2d 40] ; *People* v. *Coleman*, 134 Cal.App.2d 594, 599 [286 P.2d 582] ; see *People* v. *Duroncelay*, 48 Cal.2d 766, 771 [312 P.2d 690] ; *In re Dixon*, 41 Cal.2d 756, 761-762 [264 P.2d 513].)

 The further contention of a lack of foundation for the admission of the evidence seized at the appellant's house cannot be sustained. It is true that such seizure was in May of 1959, some months after the offenses alleged. But such fact did not bar the reception of such evidence. As stated in *People* v. *Pollum*, 97 Cal.App.2d 173, at page 178 [217 P.2d 463] : "The surgical instruments above mentioned were received in evidence over the objection of appellant. It is claimed this was error inasmuch as they were found in appellant's office more than a year after the times of the alleged offenses and were not shown to have been used by appellant upon any of the women. As already stated there was testimony that appellant admitted they belonged to him. There was also testimony that some of the women had been given hypodermic injections and that vaginal instruments of some sort had been used upon them. It is true that the discovery of the instruments in appellant's office was remote as to time but we do not regard the case as one in which it was necessary in order to render them admissible that evidence should have been produced from which it could reasonably be inferred that they had some connection with the commission of the crime. (See *People* v. *McCall*, 10 Cal.App.2d 503 [52 P.2d 500].) If it had been necessary to produce such evidence in the present case there was a failure of such preliminary proof. But it was not necessary to connect the instruments with the commission of the acts charged to render them admissible in evidence. Possession of the instruments was evidence that defendant's office was equipped for the performance of operations of the nature described by the witnesses." The court further pointed out (p. 179) that the admission in evidence of the instruments was justified by the fact that they were suitable for use in the operation described by the witness and that it was for the trier of fact to determine from all the evidence what weight should be given to the fact that the instruments were found in the appellant's office about a year after the commission of the offenses. To similar effect is *People*

340

v. *Kendall, supra,* 111 Cal.App.2d 204, 212 [244 P.2d 418].
 In *People* v. *Vosburg,* 123 Cal.App.2d 535, at pages 536-537 [266 P.2d 927], it was said: "It is well settled that evidence of possession of instruments suitable for performance of abortions is admissible without the necessity of connecting the instruments with the commission of the crime."

 The appellant's final contention is that there was prejudicial error in that a single crime was improperly split into several parts, there being eight counts charging the crime of abortion and but three women involved. Such position lacks substance. It was said of a similar contention in *People* v. *Rhoades,* 93 Cal.App.2d 448, at pages 450-451 [209 P.2d 33]: "Defendant's argument in support of her first contention is that the crimes charged in counts one and two were in fact but one crime, in that by the testimony of the prosecution witness it was shown that although she received two treatments such treatments were administered with the intent to abort but a single pregnancy, and that therefore she was placed in double jeopardy by being charged and convicted twice for what was but one offense. Such contention is without merit. . . .

 "It is readily apparent that the gist of the crime is not the actual consummation of an abortion as such but rather it is the performing of any of the acts prohibited by said section [Pen. Code, § 274] with the intent to procure a miscarriage which constitutes the crime of abortion. Therefore despite the fact that the same single pregnancy was involved in counts one and two, nevertheless, as the information charged and the evidence conclusively shows, in each instance there was an 'intent to procure' a miscarriage by prohibited means. . . . Consequently the complaint properly charged defendant with the commission of two separate crimes."[4] The Rhoades

---

[4]We need not be concerned whether there was a variance in any instance between the date of a particular offense as pleaded and the date for its occurrence as shown by the proof. Thus, in *People* v. *Cook,* 136 Cal.App.2d 442 [288 P.2d 602], where the offense was alleged to have taken place "on or about the 4th day of August, 1954," but the proof was of an occurrence on August 5, 1954, the court said at pages 446-447: "In the first place, proof of the occurrence of an act on the day following that alleged is not a substantial variance. The fifth day was certainly *about* the fourth day. That much variance is not sufficient to mislead a prisoner in preparing his defense. (*People* v. *Williams,* 27 Cal.2d 220, 226 [163 P.2d 692].) The precise time of a crime need not be declared in the accusatory pleading; it is sufficient if it alleges the commission of the offense at any time before the filing of the information, unless the time 'is a material ingredient in the offence.' (Pen. Code, § 955.) No prejudice is shown to have resulted from the variance of one day between the allegation and the proof."

case was followed in the recent case of *People* v. *Wilkes*, 177 Cal.App.2d 691, wherein it was said at page 698 [2 Cal.Rptr. 594] : "Defendant filed a demurrer to the information on the ground that 'the information charged the same offense twice.' The court overruled his demurrer. The information charged defendant with three separate counts of administering 'a substance' to Mrs. Muise. Each count was alleged to have involved the administration of 'a substance' on different days, i.e., April 11, 12, and 19, 1958. He argues that in each count the act was the same; that it involved the same pregnancy, and that it was a splitting of the alleged offense into three parts. He therefore concludes that the demurrer to the information should have been sustained. In making this argument defendant misconceives the real basis of the offense. The gist of the crime is not the actual consummation of an abortion as such but rather the performance of any of the acts enumerated in section 274, Penal Code, with the intent to procure a miscarriage." (See also *People* v. *Von Mullendorf*, 110 Cal. App.2d 286, 290-291 [242 P.2d 403].)

There was substantial support in the evidence for the determination of the trial court with respect to each count. No error appears.

The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied December 8, 1960, and appellant's petition for a hearing by the Supreme Court was denied January 4, 1961.