[Crim. No. 8903. Second Dist., Div. Two. Aug. 20, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ELROY ELMER TATGE, Defendant and Appellant.

Sigel & Cronin and Allan A. Sigel for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—Defendant Tatge appeals from conviction upon count I of a three-count information. That count charged him with having committed an abortion upon Mrs. Lee A. Wilber on June 3, 1962, a violation of Penal Code section 274.[1] Count II charged appellant Tatge and Rex Eugene Tomkins with conspiracy to commit an abortion, i.e., that on June 25, 1962 they conspired with Willis J. Batson and Lee A. Wilber to commit the crime of abortion. The overt acts specified relate in each instance to Carlene Petersen, not to Mrs. Wilber. Count III charged appellant Tatge and said Tomkins with attempted abortion of Carlene Petersen on June 26, 1962.

Prior to trial appellant and Tomkins presented motions to vacate the information under section 995, Penal Code. Tom-

[1]Penal Code section 274: ''Every person who provides, supplies, or administers to any woman, or procures any woman to take any medicine, drug, or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the state prison not less than two nor more than five years.''

kins' motion was granted as to all counts and appellant's motion was denied in toto.

At the close of a nonjury trial the prosecutor made the following statements to the court: "Mr. Finnerty: If Your Honor pleases, with reference to Count number III, the People are not asking for a conviction. I feel that under the case of *People* vs *Gallardo* in 41 Cal.2d 57, at page 66 [257 P.2d 29], the things that occurred in this case come nowhere on a comparative basis as the things went in the *Gallardo* case, and they ruled in that case as a matter of law there was not an attempt to commit abortion. So I do not ask for a conviction on Count III. I do not ask for a conviction on Count II. I do not feel that the crime of conspiracy has been committed. With reference to Count I, I do ask for a conviction." The court found all defendants not guilty on counts II and III but convicted Tatge of the offense of abortion upon Mrs. Wilber as charged in count I, granting him probation for one year.

■ Appellant's principal attack upon the judgment is a claim that the evidence is insufficient to sustain the conviction because of lack of adequate corroboration. This of course refers to corroboration of the testimony of Mrs. Wilber, the alleged abortee, which is required by section 1108, Penal Code: "Upon a trial for procuring or attempting to procure an abortion, or aiding or assisting therein . . . the defendant cannot be convicted upon the testimony of the woman upon or with whom the offense was committed, unless she is corroborated by other evidence." ■ Although an abortee is not an accomplice, the test to be applied is that of section 1111, Penal Code (*People* v. *MacEwing*, 45 Cal.2d 218, 224 [288 P.2d 257]), which section says: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

■ The corpus delicti of abortion consists merely of an attempt to produce a miscarriage (*People* v. *Berger*, 131 Cal. App.2d 127, 129 [280 P.2d 136]; *People* v. *Wilkes*, 177 Cal. App.2d 691, 700-701 [2 Cal.Rptr. 594]), which implies specific intent based upon knowledge or belief of pregnancy on the part of the defendant. Proof of actual pregnancy or completed miscarriage is not necessary (1 Cal.Jur.2d § 11, p. 159; *People* v. *Pollum*, 97 Cal.App.2d 173, 177 [217 P.2d 463]),

provided defendant believes the woman pregnant and acts with intent to induce a miscarriage (1 Witkin on California Crimes, § 580, p. 522).

▮ The corroboration required by the statute need not go to the corpus delicti but to defendant's connection with same once it has been established by other evidence; it need relate only to some act or fact which is an element of the offense. Such is the language of Penal Code section 1111, quoted *supra,* and the settled holding of the courts (*People* v. *Gallardo,* 41 Cal.2d 57, 62-63 [257 P.2d 29]). ▮ One abortee may corroborate another in many instances, i.e., in situations such as stated in *People* v. *Davis,* 43 Cal.2d 661, 675 [276 P.2d 801]: "Either one of the women upon whom an abortion was performed can act as a corroborating witness with respect to matters which she may have observed that are relevant to the other count charging the performance of an abortion upon the other woman. [Citation.] The independent testimony of the two victims of abortion is mutually corroborative in that it shows that both abortions were committed in a similar manner following the same procedure. [Citations.]" But as said in *People* v. *Feigin,* 174 Cal.App.2d 553, 561 [345 P.2d 273]: "It is a well established rule but it has no application to the facts of the instant case. As we shall presently develop there was sufficient proof of the commission of an abortion upon Jeanne but that is of no significance in view of the fact that the evidence failed to establish the commission of the offense upon Margarita. Manifestly it is only where the commission of two or more offenses is proved that evidence of pursuit of a common plan and procedure can be shown."

This last quotation rules out the attempt to corroborate the story of the alleged abortee Wilber by the evidence of alleged attempted abortion upon Carlene Petersen (count III) which was found to be not proved, thus exonerating defendant Tatge of that charge. His codefendant Tomkins had previously been dismissed through granting of a motion under section 995 upon all counts.

▮ Defendant did not testify and no witnesses were called in his behalf. He elected to wear the mantle of presumption of innocence, which is evidence in his favor. (18 Cal.Jur.2d § 79, p. 507; *People* v. *Graham,* 191 Cal.App.2d 521, 532 [12 Cal.Rptr. 893].) The only witnesses produced by the prosecutor were Mrs. Wilber, Charles Castonguay, Willis Batson, Carlene Petersen and Police Officer John H. Edwards, Jr. The testimony of Petersen and Edwards had to do with count

III only and is in no way corroborative of Mrs. Wilber's testimony.

In *People* v. *Ballard*, 167 Cal.App.2d 803, 818-821 [335 P.2d 204], the court found that with or without the testimony of the corroborating witnesses sufficient proof of the corpus delicti had not been made and reversed the judgment of conviction. We seem to have the same problem in this case.

Mrs. Lee Wilber's testimony left several lacunae in the attempted proof of an abortion and they were not filled by that of any of the other witnesses. She was a cocktail waitress at a place known as The Arsenal; she saw defendant at his office in Los Angeles on June 2, 1962, at 10 a.m. and was alone with him. She went there for the purpose of learning whether she was pregnant. She told defendant on that visit that she thought she was pregnant and asked him to see if she was. There was no further conversation about pregnancy. He made a pelvic examination of her and told her to come back the next day. The doctor was not asked his diagnosis and did not advise Mrs. Wilber of it, told her nothing except to return on the next day.

On the following day she returned with Charles Castonguay who waited in the reception room while she was with the doctor in another place in his offices. She saw some instruments in the office but did not specify and could not identify any of them. She said, ''the doctor did something''; she put on a gown, got on the table and ''the doctor treated me'' in the vaginal area. She felt something inserted in her but she did not see it, and ''I would say the same thing that he uses for an examination.'' During this ''treatment'' she felt discomfort, felt something touching her in the vaginal area but did not know what it felt like; it was inside her. There was no conversation on that occasion about pregnancy, defendant was not asked and did not give his diagnosis and he told her nothing but gave her a prescription for insertion to prevent infection. The entire treatment took from half an hour to an hour and she was on the table from 20 to 30 minutes. For ''these treatments'' she paid defendant $375 in cash, asked for no receipt and none was given or offered to her. She got up, put on her coat and left and never returned.

Questioned by the court, Mrs. Wilber further said that when she went to defendant she had not missed a menstrual period and was not late; had had two previous periods that were not exactly normal but had not missed a period. Defendant never said what he was going to do and she did not

ask him. When she first saw him she told him she wanted to see what was wrong with her; that she thought she was pregnant. At no time was there any conversation with defendant about terminating pregnancy, those words were never mentioned and the conversation just never came up. On redirect she said, "at the present time if I were pregnant I would want it terminated"; also that at the time that she went to defendant she desired to terminate pregnancy if she were pregnant, but she did not convey that thought to Dr. Tatge or anyone else. The rest of her testimony related to Carlene Petersen and her assisting Miss Petersen to make an appointment with defendant. Petersen, incidentally, was working for the police in pretending pregnancy and the desire for an abortion.

There is little in the foregoing to corroborate. She went to defendant to learn if she was pregnant; thought he gave her a vaginal examination; he never told her whether she was pregnant; told her to return the next day but never told her what he intended to do; on that next day he gave her an examination which, so far as appears, did not differ substantially from an ordinary vaginal examination or treatment; she called it a treatment but she did not know what it was for. Given a prescription for a drug to prevent infection, she got off the table, dressed, put on her coat and walked out of the office. The witness gave no account of any subsequent distress or necessity of seeing another doctor or going to a hospital or any of the ordinary sequelae of an abortion, attempted or completed. She did not say that the "treatments" corrected her periods in any way. There is nothing in all of this to furnish any proof that defendant knew or believed Mrs. Wilber to be pregnant or that he inserted the instrument with the intent to bring on a miscarriage.

However, the fact of her payment to him of $375 without conversation and without any receipt given or requested raises a strong suspicion that there was more to the State's charge than appears on the surface of the record; *but the payment was not corroborated by any witness.* Moreover, suspicion is not evidence; it merely raises a possibility and that is not sufficient basis for an inference of fact. (*Sanders* v. *MacFarlane's Candies,* 119 Cal.App.2d 497, 500 [259 P.2d 1010] ; *Brocato* v. *Standard Oil Co.,* 164 Cal.App.2d 749, 758 [331 P.2d 111] ; *Estate of Kuttler,* 185 Cal.App.2d 189, 204, 205 [8 Cal.Rptr. 160] ; *Estate of Teed,* 112 Cal. App.2d 638, 644 [247 P.2d 54].) In the *Kuttler* case, *supra,* it is said at page 204: "The *Eramdjian* case, *supra* [153

Cal.App.2d 590 (315 P.2d 19)], at page 602, says: "A legal inference cannot flow from the nonexistence of a fact; it can be drawn only from a fact actually established. (Code Civ. Proc., §§ 1958, 1960.) It is axiomatic that "an inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork." (18 Cal.Jur.2d 480.) Yet that is exactly what appellants are attempting to do.'

"*Reese* v. *Smith*, 9 Cal.2d 324, 328 [70 P.2d 933]: ' "If the existence of an essential fact upon which a party relies is left in doubt or uncertainty, the party upon whom the burden rests to establish that fact should suffer, and not his adversary. (*Patterson* v. *San Francisco etc. Ry. Co.*, 147 Cal. 178 [81 P. 531].) A judgment cannot be based on guesses or conjectures. (*Puckhaber* v. *Southern Pac. Co.*, 132 Cal. 363 [64 P. 480].) And, also, 'A finding of fact must be an inference drawn from evidence rather than on a mere speculation as to probabilities without evidence. A majority of chances never can suffice alone to establish a proposition of fact, since the slightest real evidence would outweigh all contrary probabilities.' (23 Cor. Jur., § 1750, p. 18.) " '

"*Sweeney* v. *Metropolitan Life Insurance Co.*, 30 Cal.App. 2d Supp. 767, 772 [92 P.2d 1043]: 'An inference is a deduction which the reason of the jury makes from the facts proved. (Code Civ. Proc., § 1958.) It is not a mere conjecture or an arbitrary *dixit* without reason and without factual support.' "

 Defendant was not arrested on the Wilber charge but on the alleged attempt at abortion on Miss Petersen. That was on July 2, 1962. Officer Edwards was permitted,. over objection of defendant that the corpus delicti had not been established, to testify that at the time of arrest he said to defendant: "Doctor, it appears that you have got yourself into a mess," and that defendant replied: "Yes, it sure does." Also: "Lieutenant Beck asked the doctor why a young man in his position would get himself into such a fix. The doctor said, 'Well, I am having marital problems,' and as near as I can recall he said he is obligated for the building for eighteen or nineteen hundred dollars a month. He said it was just too much and that is the reason that he got into this particular phase of the operation." Nothing in this refers to the Wilber matter. The phrase "this particular phase of the operation" is too vague to be so construed. Moreover, an admission of defendant (if this were one) could not be used to supply proof of corpus delicti otherwise missing. *People* v.

*Powell,* 34 Cal.2d 196, 203 [208 P.2d 974] : "There must be a prima facie showing, by evidence independent of the above quoted extrajudicial admissions of defendant, of the corpus delicti; i.e., that there was injury of the sort forming the basis of the crimes and that the injury was caused by a criminal agency." See also, Fricke, California Criminal Evidence (5th ed.) page 100.

▆ Charles Castonguay testified that he drove Mrs. Wilber to defendant's office on June 3rd and on that same day had loaned her $280; she had borrowed before and on this occasion did not indicate why she wanted a loan; he did not see her make any payment to defendant. He remained in the waiting room while Mrs. Wilber was with the doctor. As she left, the witness asked her how she felt and she said not very good. This adds nothing of an implicating nature to the testimony of Mrs. Wilber above reviewed.

Willis Batson testified he knew defendant and in early June 1962, telephoned him at Mrs. Wilber's request and made an appointment for her. He told the doctor that she believed she was pregnant and would like to be checked; also asked defendant if he would help her and defendant said he did not know but to send her up. Later, Batson made an appointment with defendant for Miss Petersen. The rest of his testimony bore upon the Petersen matter and added nothing to the proofs on count I. The witness never talked to defendant about the result of Mrs. Wilber's visit to him. Neither abortion nor any synonym for that word was mentioned in any conversation with defendant. He merely said he would examine Mrs. Wilber and did not mention miscarriage. There is nothing in this to connect defendant with any violation of the abortion statute.

Miss Petersen testified about Mrs. Wilber's help in making an appointment with defendant for her and that is all of her testimony that pertained to Mrs. Wilber.

We conclude that there was no competent evidence to constitute a prima facie showing of the corpus delicti of count I; that there was nothing of substance for the other witnesses to corroborate and that, if it were conceded *arguendo* that such a showing was made, the attempted corroboration fell within the condemnation of the line of cases exemplified by *People* v. *MacEwing, supra,* 45 Cal.2d 218, 224, *People* v. *Buono,* 191 Cal.App.2d 203, 217 [12 Cal.Rptr. 604], and *People* v. *Goldstein,* 136 Cal.App.2d 778, 788 [289 P.2d 581], which hold that corroboration is not sufficient if it requires interpretation

and direction from the testimony sought to be corroborated in order to give it value. *People* v. *MacEwing, supra,* says at page 225: "[C]orroboration is not adequate if it requires aid from the testimony of the person to be corroborated in order to connect the defendant with the commission of the offense charged."

The evidence is insufficient to sustain the conviction and the judgment (order granting probation) is reversed. The appeal from order denying new trial is dismissed (Pen. Code, § 1237).

Fox, P. J., and Herndon, J., concurred.